**F I L E D**

OCT 0 2 2006  NF,

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |
|---|---|
| CHRIS CHELIOS, DUANE ROLOSON, and TRENT KLATT, | ) ) ) |
|  | ) |
| Plaintiffs, | ) |
| v. | ) ) |
| NATIONAL HOCKEY LEAGUE PLAYERS ASSOCIATION, TED SASKIN, TREVOR LINDEN, VINCENT DAMPHOUSSE, BOB BOUGHNER, and BILL GUERIN, | ) ) ) ) ) ) |
| Defendants. | ) ) |

06CV5333
JUDGE CONLON
MAGISTRATE JUDGE NOLAN

**JURY TRIAL DEMANDED**

## VERIFIED COMPLAINT

### INTRODUCTION

Plaintiffs bring this action for breach of contract, breach of fiduciary duty, misuse of union funds, conversion, fraud, violations of the Labor-Management Reporting and Disclosure Act of 1959 (the "LMRDA"), 29 U.S.C. § 401, *et seq.*, and breach of covenant of good faith and fair dealing, to redress continuing harm to Plaintiffs and the National Hockey League Players Association (the "NHLPA") caused by the Defendants' repeated and continuing violations of: (i) the NHLPA's Constitution and Bylaws (the "Constitution") and (ii) governing law. For more than a year, the Plaintiffs and a significant number of other members of the NHLPA have tried to restore democracy to the NHLPA by recapturing it from a handful of individuals -- one of whom, Defendant Ted Saskin, is not even a member of the NHLPA -- who wrongfully seized control of the NHLPA and then flouted the Constitution and governing law to maintain their control.

As detailed below, the Defendants' actions include the following unlawful actions:

- **Illegal Dismissal of the Executive Director**: On or about July 28, 2005, Defendants caused Robert Goodenow to be removed from his position as NHLPA Executive Director without obtaining Executive Board approval for such action, as required by the Constitution;

- **Illegal Payment of Union Funds to Former Executive Director**: Without obtaining Executive Board approval, Defendants bound and committed the NHLPA to pay in full the years remaining on Goodenow's employment contract in the amount, upon information and belief, of approximately $8 million dollars.

- **Illegal Hiring of Executive Director**: On or about July 28, 2005, Defendants appointed Saskin to the position of Executive Director of the NHLPA despite the fact that Saskin was never properly nominated for the position by the Executive Board as required by the Constitution and despite the fact that Saskin's appointment was never approved by the majority of the Executive Board in a secret ballot as required by the Constitution.

- **Illegal Use of Union Funds by Saskin**: On information and belief, Plaintiffs believe that, for some period prior to July 28, 2005 Saskin, who was then an employee of NHLPA, unlawfully used NHLPA funds for his personal use in order to campaign for the position of Executive Director and, after being unlawfully appointed to that post, Saskin unlawfully used NHLPA funds for his personal use in order to campaign for the right to receive an excessive salary as Executive Director.

- **Misrepresentations and Fraudulent Representations Regarding Salary**: Saskin knowingly, intentionally, and fraudulently misrepresented and withheld and omitted material facts in communications to NHLPA members and the Executive Board in order to obtain an unwarranted and excessive salary as NHLPA Executive Director in excess of $2,000,000 per year.

- **Misrepresentations and Fraudulent Representations Regarding Collective Bargaining**: Saskin and others acting at his direction knowingly, intentionally, and fraudulently misrepresented and withheld and omitted material facts in communications to NHLPA members during and after a lockout of the members of the NHLPA by the National Hockey League (the "NHL") which resulted in substantial harm to all NHLPA Members. Defendants further intentionally deprived the NHLPA members of a meaningful vote, *inter alia*, giving them less than twelve hours to consider and review a 600-page collective bargaining agreement (the "CBA") which contained highly technical components, including salary cap and escrow systems, intentionally and fraudulently withholding and neglecting to provide them with critical side letters which significantly affected and modified the terms of the CBA and which, among other things, effectively changed the CBA from a "soft cap" to a "hard cap" system. The little information that the Defendants did give to the players was misleading, incomplete, and did not reflect crucial elements of the agreement.

- **Refusal to Provide Information Necessary for a Meaningful Vote and Union Democracy**: Though repeatedly requested by NHLPA members to do so, Defendants failed and refused to provide contact information to union members as well as Executive Board members on grounds which they knew to be false, i.e., that if such contact information were made available, NHLPA members would receive "misinformation" from other members.

- **Refusal to Provide Financial Information**: Defendants have neglected and failed to elect a Secretary Treasurer as required by the Constitution and, despite repeated requests, Defendants have failed and refused to provide NHLPA members with annual reports and other financial information.

- **Electing an Interim Officer in Violation of the Constitution**: Despite the protests of NHLPA members, Defendants have scheduled and conducted elections for interim NHLPA Officers pending full elections in violation of the Constitution.

In short, a handful of individuals have seized control of the NHLPA in violation of the Constitution and applicable law. In the course of doing so, they have repeatedly ignored and flouted the Constitution, deprived NHLPA members of their rights, and converted the funds and resources of the NHLPA to their own use to perpetuate their continued control of the NHLPA.

## JURISDICTION AND VENUE

1.      Jurisdiction is proper in this case pursuant to 28 U.S.C. §§ 1331 and 1367, because the claims allege, in significant part, violations of the LMRDA, 29 U.S.C. § 401 *et seq.* or relate to the same transactions or occurrences that give rise to the LMRDA claims.

2.      Alternatively, jurisdiction is proper in this case pursuant to 28 U.S.C. §1332(a)(3), based on diversity of citizenship and the fact that the amount in controversy exceeds $75,000 exclusive of interest and costs.

3.      Venue is proper in this case pursuant to 28 U.S.C. § 1391 because a substantial portion of the events or omissions giving rise to Plaintiffs' claim occurred in the Northern District of Illinois and because an alien may be sued in any district.

- 3 -

### THE PARTIES

4.      Plaintiff Chris Chelios is an individual residing in Westmont, Illinois. Chelios is a member in good standing of the NHLPA and is currently a member of its Executive Board.

5.      Plaintiff Dwayne Roloson is an individual residing in Edmonton, Canada. Roloson is a member in good standing of the NHLPA and was a member of its Executive Board during the time when the events herein occurred.

6.      Plaintiff Trent Klatt is an individual residing in Grand Rapids, Minnesota and was a member of the Executive Committee and Executive Board of the NHLPA during the time when the events herein occurred.

7.      Defendant NHLPA is an unincorporated association and a labor organization within the definition of the National Labor Relations Act, 29 U.S.C. § 152(5) and a labor organization engaged in an industry affecting commerce within the meaning of the LMRDA, 29 U.S.C. §§ 402(i), (j). It is and at all times relevant and material to this proceeding has been the exclusive bargaining representative of all NHL players.

8.      Upon information and belief, defendant Saskin is an individual residing in Toronto, Canada. Since July 28, 2005, Saskin has been Executive Director of the NHLPA. For some period prior to July 28, 2005, Saskin was employed by the NHLPA as its Senior Director of Business Affairs and Licensing.

9.      Upon information and belief, defendant Trevor Linden is an individual residing in Vancouver, Canada. Linden is and at all times material and relevant to this proceeding has been the President of the NHLPA.

10.     Upon information and belief, defendant Vincent Damphousse is an individual residing in Toronto, Canada and is currently employed by the NHLPA. At all times material and

- 4 -

relevant to this proceeding, Damphousse has been a member of the NHLPA Executive Committee.

11.    Upon information and belief, defendant Bob Boughner is an individual residing in Windsor, Canada. At all times material and relevant to this proceeding, Boughner has been a member of the NHLPA Executive Committee.

12.    Upon information and belief, defendant Bill Guerin is an individual residing in St. Louis, Missouri. At all times material and relevant to this proceeding, Guerin has been a member of the NHLPA Executive Committee.

### STATEMENT OF FACTS

13.    The National Hockey League (the "NHL" or the "League") is an organization comprised of 30 professional hockey teams or clubs engaged in the operation of a professional hockey league throughout the United States and Canada. One purpose of the League is to represent its member clubs in negotiating and administering collective bargaining agreements with the NHLPA.

14.    The NHLPA bargains with the NHL on the terms and conditions of employment for all NHL players.

**The Constitution**

15.    The Constitution is a contract between the NHLPA and its members. (A true copy of the Constitution is annexed hereto as Exhibit 1.) The Constitution, as written, has been in effect at all times material and relevant to this proceeding.

**The Composition and Election of the Executive Board Under the Constitution**

16.    The Constitution provides for an Executive Board which consists of the NHLPA Officers, Player Representatives and the NHLPA's Executive Director who serves ex officio.

17.     The Constitution sets out the procedures to be followed for, among other things, electing and appointing Officers, Player Representatives and the Executive Director.

18.     Article IV of the Constitution sets out, *inter alia*, the process to be followed for electing Player Representatives and Alternate Player Representatives.

19.     Article IV expressly provides that the elections for Player Representatives and Alternate Player Representatives shall be by a secret ballot vote of a majority of the members in good standing. It states in applicable part:

## ARTICLE IV
## CLUB PLAYER REPRESENTATIVES

> The active Members of each National Hockey League Club shall elect, from among their numbers, a Club Player Representative and an Alternate Club Player Representative. The election of each shall be by secret ballot vote of a majority of the active Members in good standing voting. In order to be eligible for election as a Club Player Representative or an Alternate Club Player Representative, a person must have been a member in good standing of the Association for a least one year prior to his election. (Ex. 1, Article IV, Section 1.)

20.     Article IV of the Constitution further requires that notice of an election for a Player Representative be provided at least fifteen days prior to the election either by mailing the notice to his home or providing it to him personally. It states in pertinent part:

> The nominations and general election of Club Player Representatives and Alternate Club Player Representative shall be conducted on or before December 1st of each playing season and subsequent general elections shall take place every two years thereafter. Not less than fifteen days prior to the election, notice thereof shall be mailed to each member in good standing of the respective Club at his last known home address or delivered personally to the member. The Club Players Representative in office at the time of the election shall supervise the conduct of the election for his Club. Nominations shall be made from the floor of the elections meeting. The term of office shall be for two years except that should such Representative resign, cease to remain on the active roster of the Club he represents, or fail to maintain his

> Association membership in good standing, his Alternate
> Representative shall automatically succeed to the office and
> complete the remainder of the unexpired term. Should such
> Alternate Player Representative resign, cease to remain on the
> active roster of the Club he represents, or fail to maintain his
> Association membership in good standing, his office shall be
> declared vacant. (Ex. 1, Article IV, Section 2.)

21.    Under Article IV, Section 3 of the Constitution, each of the 30 Player

Representatives serves as a member of the Executive Board, the governing body of the NHLPA.

22.    Article V of the Constitution expressly provides for the following Officers of the

NHLPA: a President, a Senior Vice-President, two Vice-Presidents and a Secretary-Treasurer.

Article V, Section 1 provides that these Officers are to "be elected by a secret ballot vote of a

majority of the Club Player Representatives." (Ex. 1, Article V, Section 1.)

23.    The Constitution sets out the exclusive process to be followed for the election of

the above-mentioned Officers. It states in applicable part:

> The election of Officers shall be conducted at annual meetings of
> the Executive Board, and subsequent elections shall take place
> every two years thereafter. The term of office shall be for two
> years except that should an Officer resign, cease to remain on the
> active roster of a Club in the League or fail to maintain his
> Association membership in good standing, his office shall be
> declared vacant. A vacancy in the office of President shall be
> filled by the Senior Vice-President. All other vacancies shall be
> filled for the remainder of the term of office by a majority vote of
> the Club Player Representatives. Such election may be conducted
> by telephone or mail ballots. (Ex. 1, Article V, Section 2.)

24.    The Constitution requires that at least once a year the Secretary-Treasurer send an

annual report of financial conditions to the NHLPA members. It states in applicable part:

> The Secretary-Treasurer shall receive and collect all monies due to
> the Association, oversee the making of such disbursements as are
> authorized by the Executive Board, cause to be kept an accurate
> account of all monies received and expended for the use of the
> Association, and send an annual report of the financial operations
> of the Associations to all members. The Secretary-Treasurer shall

retain the services of an independent chartered accounting firm to prepare the annual statement of the Association. (Ex. 1, Article V, Section 5.)

25.    The Constitution also sets forth the exclusive procedure for electing the NHLPA's

Executive Director and further provides that the Executive Board decide and establish the terms

and conditions of the Executive Director's employment. The Constitution states in pertinent

part:

>    The Executive Director shall be nominated by the Executive Board and elected by secret ballot vote of the majority of the members of the Executive Board, and shall serve for such period as the Executive Board shall determine. The Executive Director shall carry out and implement the policies of the Association. The terms and conditions of employment of the Executive Director shall be established by the Executive Board. (Ex. 1, Article VIII, Section 1.)

**The Constitution Empowers the Executive Board to Run the NHLPA
and It Does Not Provide Binding Authority to the Executive Committee**

26.    Pursuant to the Constitution, the Executive Board is the governing body which

directs the affairs of the NHLPA. It states in pertinent part:

>    The Executive Board shall direct the affairs of the Association, consistent with the Constitution and shall establish such policy as may be necessary to carry out the objects and purposes of the Association. The Executive Board shall have the power to bind all the members of the Association, provided that the Executive Board has operated within the guidelines of the Constitution of the Association. (Ex. 1, Article VI, Section 3.)

27.    Article VII of Constitution provides for an Executive Committee.

28.    In contrast to the Executive Board, the Constitution specifically constrains the

power and authority of the Executive Committee as follows:

>    The Executive Committee shall report to the Executive Board. Except as specifically authorized, the Executive Committee has no power to bind the Executive Board or the Association. (Ex. 1, Article VII, Section 2.)

### Unlawful Conduct of Negotiations and Contract Ratification Process

29.     On or about July 28, 2005, Saskin displaced and replaced Goodenow as primary spokesperson for the NHLPA in the collective bargaining negotiations between the NHLPA and the NHL then in progress.

30.     Despite express instructions from the Executive Board that no cap be negotiated, Saskin, acting as primary spokesperson for the NHLPA, agreed to a CBA containing a system which functions as a hard cap.

31.     When the players were called upon to vote to ratify the CBA, they were deprived of the right for a meaningful vote by Saskin and other Defendants, in violation of the Constitution and governing law. Among other things, Defendants provided the players less than twelve hours to consider, review and attempt to understand and then vote on a 600-page document which contained highly technical components, including highly complex salary cap and escrow systems.

32.     Defendants further failed to provide to the players and intentionally concealed critical side letters, which significantly changed the terms and meanings of the CBA. Indeed, one of such side letters went to the very heart of the players' terms and conditions of employment since it changed the CBA from a "soft cap" to a "hard cap" system.

33.     Furthermore, before the vote was held, Defendants provided a written summary of the CBA to the players which contained a number of misrepresentations which Defendants knew to be incorrect.

**Unlawful Removal and Buy-Out of Goodenow as Executive Director**

34.     At some time prior to July 28, 2005, Saskin and Linden demanded, persuaded and caused Goodenow to resign his position as Executive Director of the NHLPA.  Saskin and Linden took this action without the knowledge or approval of the Executive Board, in violation of the Constitution.  Defendants took this action for the sole purpose of enabling Saskin to assume the position of Executive Director of the NHLPA.

35.     In order to induce Goodenow to accept his removal from the position of Executive Director of the NHLPA, Saskin and Linden offered Goodenow a buy-out of his contract for, upon information and belief, approximately $8,000,000 and committed the NHLPA to pay Goodenow said amount in return for his agreement to be removed from the Executive Director's position.  Saskin and Linden took this action without the knowledge or approval of the Executive Board, in violation of the Constitution.

**Saskin's Unlawful Appointment as Executive Director**

36.     On or around July 28, 2005, Saskin proclaimed himself Executive Director of the NHLPA without any vote of the Executive Board as required by the Constitution.  Since that date, Saskin has continuously held himself out as Executive Director of the NHLPA despite the fact that his appointment to that position has never been approved by the Executive Board as required by the Constitution.

37.     Faced with objections to their unlawful appointment of Saskin as Executive Director, Saskin and Linden attempted to cover up their misconduct by holding a so-called secret ballot election for the Executive Director's position, this time by mail-in ballot.

38.     Saskin and those acting under his direction, arranged things so that his name was the sole name which appeared on the ballot.

39. Saskin misused and manipulated the election process in his favor. Among other things, Saskin consistently blocked players from accessing information which they needed to effectively convey their opposition to his election, such as the e-mail addresses of the other Executive Board members and copies of side letters to the CBA.

**Saskin's Misrepresentations Regarding Compensation**

40. On or about August 17, 2005, Saskin sent an e-mail to Linden, the President of the NHLPA, proposing terms and conditions of his employment. The proposal set forth a list of "comparables" to justify his demands for a six year contract that would pay him an average salary of $2.1 million over the first three years and $2.6 million for the last three years.

41. In the e-mail Saskin represented that the former Executive Director, Goodenow, had been paid according to certain comparables, primarily the compensation of top professional sport team executives and other Player Association executive directors.

42. The e-mail states in pertinent part:

> Over the last few contract negotiations, Bob [Goodenow] has been paid according to certain comparables, primarily the compensation of other Executive Directors from the other PA's [Player Associations], top GM's [General Managers] and Gary Bettman. I understand that Gene Upshaw's new agreement in Football exceeds $3 million annually, Billy Hunter is at just over $2.8 million in Basketball and while I am not aware of Don Fehr's current compensation, I do know that his entitlement to a lifetime pension of $150K per year adds significant value to his compensation package and makes direct salary comparisons much more difficult. I understand that top General Managers have not been impacted by the 24% rollback so their salaries remain above $2 million annually. At the League office, Bill Daly recently saw his compensation double from just below $1 million to just under $2 million (as he was promoted to Deputy Commissioner after new CBA was finalized) and it is anticipated that Gary Bettman's compensation will increase from its current level of $3.5 million per year. Without suggesting that any of these particular contracts are directly comparable, I think a base salary averaging $2,147,000 in the first 3 years and $2,603,000 in the last 3 years (or

$2,375,000 over a 6 year term) is significantly lower than many of the traditional comparables but I think the 24% rollback is an important signal for many players and is the right thing to do in all of the circumstances.

43. Saskin fraudulently misstated and wrongfully claimed alleged compensation paid to others as "comparable" in order to benefit himself, and fraudulently concealed and withheld other information, including the fact that Don Fehr, the recognized "dean" of professional sports union executive directors, received a salary equal to less than one-half of what he, Saskin, was demanding from the NHLPA.

**Unlawful Approval of Saskin's Terms of Employment**

44. In stark violation of the Constitution, on or about August 30, 2005 Defendants engineered a conference call on less than twenty-four hours notice to ensure that Saskin's contract would be confirmed.

45. Over the strenuous objections of other members of the Executive Board, the conference call was held and Saskin's proposed terms and conditions of employment were adopted in direct violation of the Constitution.

**Saskin's Unlawful Use of NHLPA Funds**

46. On information and belief, Plaintiffs allege that, on repeated occasions prior to and after July 28, 2005, Saskin used NHLPA funds for his own personal use in order to campaign for his appointment to the position of Executive Director of the NHLPA.

47. On information and belief, Plaintiffs allege that, on repeated occasions prior to and after August 29, 2005, Saskin used NHLPA funds for his own personal use in order to campaign for support of his demand for excessive compensation as Executive Director of the NHLPA.

**Saskin Continues to Violate the Constitution**

48.     As of the date of this Complaint, Saskin continues his wrongful control of the NHLPA and continues to violate the Constitution.  For example, in July 2006, Saskin held an election for the appointment of "interim officers" in stark violation of the Constitution.

49.     Likewise, on information and belief, Saskin and others using the power seized by Saskin are now attempting to amend the Constitution to centralize power in the hands of Saskin and the individuals he handpicks.

**Plaintiffs' and Others' Repeated Protests and Objections**

50.     Plaintiffs, other Players, members of the Executive Board, and their counsel have voiced repeated protests and objections to each and every one of the unlawful actions set forth herein.  Defendants have consistently and repeatedly ignored these protests and objections and have repeatedly refused to take any action to accommodate Plaintiffs in any way with regard to their protests and objections.

**FIRST CLAIM FOR RELIEF**
**(Breach of Contract)**

51.     Plaintiffs reallege paragraphs 1 through 50 above, as if fully set forth herein.

52.     The Constitution is a valid contract between the NHLPA and the Players, including Plaintiffs.

53.     By virtue of the conduct detailed above, Defendants have repeatedly violated the NHLPA contract with the Players, including Plaintiffs, by their numerous breaches of the Constitution including their dismissal of Goodenow as Executive Director of the NHLPA, their agreement, upon information and belief, to pay Goodenow $8,000,000, their placement and retention of Saskin in the position of Executive Director of the NHLPA and payment to Saskin of excessive compensation in said position, their refusal to provide information to Plaintiffs to

enable Plaintiffs to communicate with other members of the NHLPA, their appointment of interim officers of the NHLPA, their acceptance of a hard cap in negotiations with the NHL, and their misrepresentation and withholding of information to and from the Players and the manipulation of the vote to approve the contract which they had unlawfully negotiated with the NHL, all of which actions were taken without any authority or approval of the Executive Board.

54. By reason of the foregoing, Defendants are liable to Plaintiffs in an amount to be determined at trial but in no event less than $8,000,000, in addition to pre-judgment and post-judgment interest as permitted by law.

55. By reason of the foregoing, Plaintiffs are entitled to have Saskin dismissed from the position of Executive Director of the NHLPA and are further entitled to participate in a properly held election to determine the Executive Director of the NHLPA, as provided by the Constitution.

### SECOND CLAIM FOR RELIEF
### (Violation of LMRDA - 29 U.S.C. § 501)

56. Plaintiffs reallege paragraphs 1 through 55 above, as if fully set forth herein.

57. At all times material and relevant to this proceeding, Defendants Saskin, Linden, Damphousse, Boughner, and Guerin had fiduciary responsibilities toward the NHLPA, Plaintiffs and the other player members of the NHLPA, within the meaning of LMRDA Section 501.

58. Defendants Saskin, Linden, Damphousse, Boughner, and Guerin breached their fiduciary responsibilities by misappropriating the funds of the NHLPA by promising to pay $8,000,000 to Bob Goodenow.

59. On information and belief, Defendant Saskin, with the approval of Defendants Linden, Damphousse, Boughner, and Guerin, breached his fiduciary responsibilities by using the funds of the NHLPA for his own personal use in order to campaign for the position of Executive

Director and in order to campaign to receive an excessive level of compensation in that position.

60.     Defendants Saskin, Linden, Damphousse, Boughner, and Guerin breached their fiduciary responsibilities by knowingly misrepresenting and withholding relevant information in order to obtain funds from the NHLPA in the form of compensation far in excess of that to which he was entitled.

61.     Defendant Saskin, with the knowledge and approval of Defendants Linden, Damphousse, Boughner, and Guerin, breached his fiduciary responsibilities by knowingly diverting funds from the NHLPA to compensate those individuals who were loyal to him in the form of salary raises and job positions in the NHLPA.

62.     Plaintiffs and others have repeatedly protested and objected to the Executive Board concerning the breach of fiduciary responsibility by Defendants Saskin, Linden, Damphousse, Boughner, and Guerin. Defendants Saskin, Linden, Damphousse, Boughner, and Guerin have, by their unlawful acts, made it impossible for these protests and objections to be heard or objectively considered by the Executive Board thereby making it impossible for the Executive Board to even consider bringing suit against Defendants Saskin, Linden, Damphousse, Boughner, and Guerin for said breaches. Given these circumstances and the fact that Saskin is the Executive Director of the NHLPA, that Linden is the President of the NHLPA, and that Defendants Damphousse, Boughner, and Guerin are on the Executive Committee of the NHLPA, it would be futile for Plaintiffs to request that the Executive Committee sue the Defendants to recover damages, an accounting, or other appropriate relief for the benefit of the NHLPA.

63.     By reason of the foregoing, Defendants Saskin, Linden, Damphousse, Boughner, and Guerin are liable to Plaintiffs in an amount to be determined at trial, in addition to pre-judgment and post-judgment interest as permitted by law.

64.    Defendants Saskin, Linden, Damphousse, Boughner, and Guerin's breach of

fiduciary duties was gross, wanton, willful and deliberately designed to injure the NHLPA and

Plaintiffs and the NHLPA is entitled to punitive damages in connection therewith in an amount

to be determined at trial.

### THIRD CLAIM FOR RELIEF
### (Fraudulent Misrepresentation)

65.    Plaintiffs reallege paragraphs 1 through 64, as if fully set forth herein.

66.    As set forth above, Defendants knowingly made numerous misrepresentations and

omissions.

67.    These misrepresentations and omissions were knowingly and intentionally made

with the knowledge and intent that Plaintiffs, the members of the Executive Board, and other

Players represented by the NHLPA would rely on them.

68.    Plaintiffs, the members of the Executive Board, and other Players represented by

the NHLPA reasonably relied on these misrepresentation and omissions to their detriment.

69.    Defendants had a duty and obligation to disclose the concealed information based

on their superior knowledge and exclusive access to such information.

70.    If Plaintiffs and the members of the Executive Board had known the truth about

the misrepresentations, misstatements and concealments made to them, Goodenow would not

have received $8,000,000 following his departure from the position as Executive Director,

Saskin would not have become the Executive Director of the NHLPA, Saskin would not have

been paid the excessive level of compensation he has been and is now receiving, and the CBA

with the NHL would not have been ratified in its current form.

71.     By reason of the foregoing, Defendants are liable to Plaintiffs, jointly and severally, in an amount to be determined at trial with pre-judgment and post-judgment interest at the rates applicable by law.

72.     Defendants' fraudulent conduct was gross, wanton, willful and deliberately designed to injure Plaintiffs and Plaintiffs are therefore entitled to punitive damages in connection therewith in an amount to be determined at trial.

**FOURTH CLAIM FOR RELIEF**
**(Conversion)**

73.     Plaintiffs reallege paragraphs 1 through 72, as if fully set forth herein.

74.     Plaintiffs as members of the NHLPA collectively owned the NHLPA funding.

75.     Defendants have unlawfully used NHLPA funding to promote their own interests to the detriment of the Plaintiffs.

76.     Defendants use of NHLPA funding to, among other things, promote Saskin as Executive Director and to pay Goodenow $8,000,000 was unauthorized by the Executive Board.

77.     The NHLPA funding unlawfully used by Defendants is specifically identifiable.

78.     By reason of the foregoing, Defendants are liable to Plaintiffs in an amount to be determined at trial, in addition to pre-judgment and post-judgment interest as permitted by law.

79.     Defendants' conversion of NHLPA funding was gross, wanton, willful and deliberately designed to injure Plaintiffs and further Saskin's unlawful usurpation of power and Plaintiffs are entitled to punitive damages in connection therewith in an amount to be determined at trial.

## FIFTH CLAIM FOR RELIEF
### (Violation of LMRDA - 29 U.S.C. § 411)

80.     The Plaintiffs repeat and reallege paragraphs 1 through 79 of the Complaint as if fully set forth herein.

81.     By the aforementioned actions, Defendants have repeatedly denied Plaintiffs, other Player members of the NHLPA, and other members of the Executive Board of the right to vote and participate in the deliberations and voting upon the business of the NHLPA including the removal and election of Executive Directors, the amount to be paid to former Executive Directors following their removal from office, the compensation to be paid to the Executive Director, the ratification of negotiated CBAs, and other business properly before the Executive Board and the NHLPA membership, as such rights are guaranteed by Section 101(a)(1) of the LMRDA, 29 U.S.C. § 411(a)(1) and the NHLPA Constitution.

82.     By the aforementioned actions, Defendants have repeatedly denied Plaintiffs and other Player members of the NHLPA the right to express their views, arguments and opinions to other members and their right to express their views on matters before the NHLPA including the removal and election of Executive Directors, the amount to be paid to former Executive Directors following their removal from office, the compensation to be paid to the Executive Director, and the ratification of negotiated CBAs , and other business properly before the Executive Board and the NHLPA membership as such rights are guaranteed by Section 101(a)(2) of the LMRDA, 29 U.S.C. § 411(a)(2) and the NHLPA Constitution.

83.     Plaintiffs were damaged by Defendants' actions depriving them of their rights guaranteed by LMRDA Sections 101(a)(1) and 101(a)(2) in an amount to be determined at trial.

## SIXTH CLAIM FOR RELIEF
### (Breach of Covenant of Good Faith and Fair Dealing)

84.     Plaintiffs reallege paragraphs 1 through 83, as if fully set forth herein.

85.     Defendants had a duty to abide by the Constitution and act fairly and in good faith.

86.     Through their unlawful conduct, Defendants have breached the covenant of good faith and fair dealing.

87.     By reason of the foregoing, Defendants are liable to Plaintiffs in the amount to be determined at trial in addition to pre-judgment and post-judgment interest as permitted by law.

## SEVENTH CLAIM FOR RELIEF
### (Accounting)

88.     Plaintiffs reallege paragraphs 1 through 87 as if fully set forth herein.

89.     Defendants Saskin and Linden were and are fiduciaries of the NHLPA.

90.     The Defendants Saskin and Linden had fiduciary and other duties to the NHLPA in connection with, among other things, maintenance of NHLPA assets.

91.     Defendants Saskin and Linden breached these duties when they authorized and committed the NHLPA to pay excessive amounts to Goodenow and Saskin. Saskin further breached these duties when he utilized assets of the NHLPA to campaign for and promote his appointment to the position of Executive Director of the NHLPA and to campaign for and promote his right to excessive compensation.

92.     Accordingly, Plaintiffs are entitled to an accounting of all consideration, revenues and profits received by the NHLPA and the other Defendants.

93.     At the conclusion of such accounting, Plaintiffs are entitled to recovery against the Defendants, of all consideration, revenues and profits received by them as a result of the conduct and mismanagement described herein and the imposition of a constructive trust thereon.

94.     By reason of the foregoing, Defendants are liable to Plaintiffs in the amount to be determined at trial in addition to pre-judgment and post-judgment interest as permitted by law.

**WHEREFORE**, Plaintiffs demand judgment against Defendants, as follows:

1.     That Saskin be removed from his position as Executive Director based on the conduct alleged above;

2.     That the Court appoint a Trustee until the Executive Board, Executive Committee, and an Executive Director are all elected in compliance with the Constitution;

3.     On the First Claim for Relief, judgment against Defendants, jointly and severally, for damages in an amount to be proved at trial, with pre-judgment and post-judgment interest at the highest rates permitted by law;

4.     On the Second through Seventh Claims for Relief, judgment against Defendants, jointly and severally, for damages and punitive damages in an amount to be proved at trial, respectively, with pre-judgment and post-judgment interest at the rates permitted by law.

5.      On all Causes of Action, for interest, costs, disbursement, and such other and

further relief as this Court deems just and proper.

Dated: October 2, 2006                 Respectfully submitted,

                        By:     _____

                                One of the attorneys for plaintiffs Chris Chelios,
                                Duane Roloson, and Trent Klatt

Robert J. Lanza (NY Bar No.: RL-4488)          Richard L. Marcus (ARDC No.: 01761676)
(App. for admission *pro hac vice* forthcoming)  John I. Grossbart (ARDC No.: 03126133)
**SONNENSCHEIN NATH & ROSENTHAL LLP**          **SONNENSCHEIN NATH & ROSENTHAL LLP**
1221 Avenue of the Americas                    7800 Sears Tower
New York, New York 10020-1089                  Chicago, Illinois 60606-6404
Telephone:      (212) 768-6700                 Telephone:      (312) 876-8000
Facsimile:      (212) 768-6800                 Facsimile:      (312) 876-7934

NY: 17537530
CH: 14513204

## **VERIFICATION**

I, Chris Chelios, state that I am a player in the National Hockey League and that I am a member in good standing of the National Hockey League Players' Association. I have personal knowledge of those matters stated in the Verified Complaint. Under penalties as provided by law pursuant to Illinois Revised Statute Ch. 110, §1-109, I certify that the statements set forth herein are true and correct, except as to matters therein stated to be on information and belief.

Dated: Detroit, Michigan

September 28, 2006

_____
CHRIS CHELIOS

Sworn to before me this
28 day of September 2006

_____
Notary Public

BRIAN SOLOMON
Notary Public, State of Michigan
County of Oakland
My Commission Expires Dec. 22, 2010
Acting in the County of OAKLAND

# Exhibit 1

# Constitution of the National Hockey League Players' Association

## ARTICLE I
### NAME

This Organization shall be known as the National Hockey League Players' Association, hereinafter also referred to as the Association. This document shall be known as the Constitution and By-laws of the Association.

## ARTICLE II
### OBJECTS

Section 1.   The objects and purposes of the Association shall be:

a.   To bring together in the organization, regardless of race, creed, colour or nationality, all National Hockey League players.

b.   To promote and foster the best interests of hockey.

c.   To negotiate improvements in conditions of employment for National Hockey League players.

d.   To provide information and assistance to National Hockey League players and engage in activities to advance and safeguard their welfare.

e.   To develop such projects and enterprises which will bring further benefits to Members as individuals or to the Association as an entity.

f.   To take all steps and actions consistent with the Constitution and By-laws of the Association to implement and carry out the objects, rights, activities and responsibilities of the organization.

## ARTICLE III
### MEMBERSHIP

All players who play in the National Hockey Leauge and, who have signed a contract with a Club in the National Hockey League shall be eligible for membership in the Association.

## ARTICLE IV
### CLUB PLAYER REPRESENTATIVES

Section 1.   The active Members of each National Hockey League Club shall elect, from among their members, a Club Player Representative and an Alternate Club Player Representative. The election of each shall be by secret ballot vote of a majority of the active Members in good standing. In order to be eligible for election as a Club Player Representative or an Alternate Club Player Representative, a person must have been a member in good standing of the Association for a least one year prior to his election.

Section 2.   The nominations and general election of Club Player Representatives and Alternate Club Player Representative shall be conducted on or before December 1st of each playing season and subsequent general elections shall take place every two years thereafter. Not less than fifteen days prior to the election, notice thereof shall be mailed to each member in good standing of the respective Club at his last known home address or delivered personally to the member. The Club Players Representative in office at the time of the election shall supervise the conduct of the election for his Club. Nominations shall be made from the floor of the elections meeting. The term of office shall be for two years except that should such Representative resign, cease to remain on the active roster of the Club he represents, or fail to maintain his Association membership in good standing, his Alternate Representative shall automatically succeed to the office and complete the remainder of the unexpired term. Should such Alternate Player Representative resign, cease to remain on the active roster of the Club he represents, or fail to maintain his Association membership in good standing, his office shall be declared vacant.

Vacancies in the office of Alternate Club Player Representative, and Club Player Representative if both offices should become vacant, shall be filled for the remainder of the term of office by the holding of another election, as set forth in this Article, within twenty (20) days after the vacancy occurs. In the event the office becomes vacant between the end of the playing season and the opening of the next season, the former Club Player Representative may continue to serve until an election is held to select a new Player Representative and Alternate.

Section 3.   Each Club Player Representative shall serve as a member of the Executive Board of the Association, as hereinafter set forth, and shall confer regularly with the Members from his Club and represent such Members in the resolution of joint problems at the Club level.

Section 4.   Each Alternate Club Player Representative in the absence or disability of the Club Player Representative shall perform the duties and have the powers of the Club Player Representative.

## ARTICLE V
### OFFICERS OF THE ASSOCIATION

Section 1.   A President, Senior Vice-President, two Vice-Presidents, and a Secretary-Treasurer, shall be elected by a secret ballot vote of a majority of the Club Players Representatives to be the Officers of the Association. Preferably, each Division will be represented among the Officers. In order to be eligible for election as an officer, a person must have been a member in good standing of the Association for at least one year prior to his election and must have served as a Club Player Representative for at least one year. If a Club Player Representative or an Alternate Club Player Representative is elected as an officer, his respective office as Representative or Alternate shall automatically become vacant.

Section 2.   The election of Officers shall be conducted at annual meetings of the Executive Board, and subsequent elections shall take place every two years thereafter. The term of office shall be for two years except that should an Officer resign, cease to remain on the active roster of a Club in the League or fail to maintain his Association membership in good standing, his office shall be declared vacant. A vacancy in the office of President shall be filled by the Senior Vice-President. All other vacancies shall be filled for the remainder of the term of office by a majority vote of the Club Player Representatives. Such election may be conducted by telephone or mail ballots.

Section 3.   The Officers shall serve as members of the Executive Board of the Association.

Section 4.   The Senior Vice-President, in the absence or disability of the President, shall perform the duties and have the powers of the President.

Section 5.   The Secretary-Treasurer shall receive and collect all monies due to the Association, oversee the making of such disbursements as are authorized by the Executive Board, cause to be kept an accurate account of all monies received and expended for the use of the Association, and send an annual report of the financial operations of the Associations to all members. The Secretary-Treasurer shall retain the services of an independent chartered accounting firm to prepare the annual statement of the Association.

Section 6.   Any Officer may be removed from office at any time for proper cause upon the vote of two-thirds of the Club Player Representatives.

## ARTICLE VI
### EXECUTIVE BOARD

Section 1.   The Executive Board of the Association shall consist of the Officers, the Club Player Representatives, and the Executive Director serving ex officio. The President shall serve as Chairman of the Executive Board. All members of the Executive Board shall be voting members, except for the Executive Director.

Section 2.   The Chairman shall call regular meetings of the Executive Board once each year, and may call such additional meetings as he deems necessary. The regular meeting shall be held each year at the conclusion of the playing season. All appropriate expenses incurred by members of the Executive Board in attending Executive Board meetings shall be reimbursed by the Association.

Section 3.   The Executive Board shall direct the affairs of the Association, consistent with the Constitution and shall establish such policy as may be necessary to carry out the objects and purposes of the Association. The Executive Board shall have the power to bind all the members of the Association, provided that the Executive Board is operated within the guidelines of the Constitution of the Association. Two-thirds of the members of the Board shall constitute a quorum for the transaction of business at any meeting. Vacancies shall not be counted for purposes of determining a quorum. At a meeting, all actions by the Executive Board shall be taken by a majority of votes by the members of the Board present at the meeting. Board members may participate by general written proxy, given to another Board member, in any Board meeting, but such a proxy shall not constitute attendance for the purpose of ascertaining whether a quorum is present at any meeting. Any action required or permitted to be taken at a meeting of the Executive Board may also be taken without a meeting, if a consent in writing setting out the action so taken is signed by a majority of the members of the Executive Board then in office.

Section 4.   The Executive Board may suspend a Member from the Association for proper cause. In order to suspend a Member for reasons other than non-payment of dues, such Member shall be served with written charges specifying the grounds for suspension. The member shall be accorded not less than thirty days in which to appear for hearing and submit his defense to the Executive Board. The member shall be entitled to present arguments and witnesses in his defence. Within 30 days following such hearing, the Executive Board shall issue its final decision.

Continued on back

01/21/90

## ARTICLE VII
### EXECUTIVE COMMITTEE

Section 1. The Executive Committee shall be formed by the Officers and the Executive Director serving ex officio, and shall meet from time to time as needed between meetings of the Executive Board. The Executive Committee shall report to the Executive Board. Except as specifically authorized, the Executive Committee has no power to bind the Executive Board or the Association.

Section 2. A majority of the members of the Executive Committee shall constitute a quorum for the transaction of business at any meeting. Vacancies shall not be counted for purposes of determining a quorum. At a meeting, all actions by the Executive Committee shall be approved by a majority of votes by the members of the Committee present at the meeting. Committee members may participate by general written proxy, given to another Committee member, in any Committee Meeting, but such a proxy shall not constitute attendance for the purpose of ascertaining whether a quorum is present at any meeting. Any action required or permitted to be taken at a meeting of the Executive Committee may also be taken without a meeting, if a consent in writing setting out the action so taken is signed by a majority of the members of the Executive Committee then in office.

## ARTICLE VIII
### EXECUTIVE DIRECTOR

Section 1. The Executive Director shall be nominated by the Executive Board and elected by secret ballot vote of the majority of the members of the Executive Board, and shall serve for such period as the Executive Board shall determine. The Executive Director shall carry out and implement the policies of the Association. The terms and conditions of employment of the Executive Director shall be established by the Executive Board.

Section 2. The Executive Director shall maintain and direct the activities of the permanent office of the Association, he shall be authorized to engage counsel, technical assistance, staff and secretaries, and establish salaries or fees and conditions of employment for such persons, subject to the approval of the Executive Board.

Section 3. Between meetings of the Executive Board the Executive Director shall meet with the Executive Committee from time to time and shall direct the affairs of the Association and shall function on behalf of the Executive Board, subject to the approval of the Board.

## ARTICLE IX
### INDEMNIFICATION OF OFFICERS AND CLUB PLAYER REPRESENTATIVES

Section 1. The Officers, Club Player Representatives, employees, and agents of the Association shall not be personally liable for the Association's debts, obligations, or liabilities. Subject to the conditions hereinafter set forth, the Association shall indemnify all of its Officers, Club Player Representatives, employees, and agents against reasonable expenses including attorney's fees, settlement payments, judgements and fines, actually incurred by them in connection with the defense of any action, suit, or proceeding or threat of such action, suit or proceeding, no matter by whom brought, or in any appeal in which they or any of them are made parties or a party by reason of being or having been a member of the Executive Board, officer, Club Player Representative, employee, or agent of the Association. These individuals will be indemnified in relation to matters as to which any such member of the Executive Board, officer, Club Player Representative, employee, or agent of the Association shall be adjudged in such action, suit, or proceeding to be liable for negligence or misconduct in the performance of duty to the Association, to the extent that a court of law shall determine such member of the Executive Board, officer, Club Player Representative, employee, or agent of the Association acted in good faith and in a manner he reasonably believed to be in or not opposed to the best interests of the Association.

## ARTICLE X
### DUES

Section 1. The Executive Board, at its annual meeting shall fix for the following year the rate of annual dues for Members of the Association by a majority vote of the Board members. Special assessments may be levied upon recommendation of the Executive Board and ratification by a majority of the Members in good standing voting.

Section 2. A Member who fails to pay or authorize the payment of his dues shall automatically be suspended from the Association and shall lose all the rights and privileges of membership. A service fee will be deducted from each N.H.L. player's salary even if the player declines membership in the Association. Said fee will be equal to Association dues.

## ARTICLE XI
### AMENDMENTS

Section 1. This Constitution may be amended upon recommendation of the Executive Board and ratification by the vote of a majority of the Members in good standing.

Section 2. The Executive Board may from time to time, enact such additional by-laws as it may consider appropriate with respect to the affairs and policies of the Association.

## ARTICLE XII

This Constitution and By-laws shall become effective as of the date of the next annual meeting of the Executive Board following ratification by the vote of a majority of the Members in good standing.