# IN THE UNITED STATES DISTRICT COURT
# OF THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| CHRIS CHELIOS, DUANE ROLOSON, and TRENT KLATT, | ) ) ) | Case No. 06 CV 5333 |
| Plaintiffs, | ) ) | Judge Conlon Magistrate Judge Nolan |
| v. | ) ) | |
| NATIONAL HOCKEY LEAGUE PLAYERS' ASSOCIATION, TED SASKIN, TREVOR LINDEN, VINCENT DAMPHOUSSE, BOB BOUGHNER, and BILL GUERIN, | ) ) ) ) ) ) | |
| Defendants. | ) | |

## DEFENDANT NHLPA'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS FOR FORUM NON CONVENIENS

This lawsuit challenges decisions made by the leadership of the National Hockey League Players' Association ("NHLPA"), a Canadian labor organization. If this dispute must be resolved in a court, it should be resolved in an Ontario court. All of the events underlying the alleged claims took place in Canada. One of the plaintiffs and four of the five individual defendants reside in Canada. Most of the key witnesses reside in Ontario and could not be compelled to testify here. Conversely, Illinois has no meaningful connection to this litigation. Therefore, this Court should dismiss the complaint under the doctrine of forum non conveniens.

## I. OVERVIEW

The NHLPA was involved in a protracted labor dispute with the National Hockey League that ultimately forced the cancellation of the 2004-05 NHL hockey season. The dispute was settled with the ratification of a new collective bargaining agreement ("CBA") in July, 2005. *See*

1

105947v1

Ex. 1, Kim Decl. at ¶¶ 23-24; Ex. 6, Saskin Decl. at ¶ 22.[1] Following ratification, defendant Ted Saskin replaced Bob Goodenow as the NHLPA's Executive Director. (The other individual defendants are former NHLPA Executive Committee members, who are hockey players elected by the NHLPA membership to serve in non-paying positions. *See* Ex. 1, Kim at ¶ 14.)

Plaintiffs challenge Goodenow's departure, Saskin's hiring, CBA ratification and the election of interim NHLPA officers. Most of these events took place eighteen months ago. Inexplicably, plaintiffs now seek to litigate these claims in the Northern District of Illinois.

Illinois, however, has no connection to this lawsuit. Canada was the location of each of the events at issue in the Complaint (*See*, Individual Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, which contains a detailed discussion of the situs of each relevant event.) Goodenow's termination, Saskin's hiring and salary negotiation, and election of interim NHLPA officers all took place in Canada. *See* Ex. 5, Linden Decl. at ¶¶ 10-36; Ex. 6, Saskin at ¶¶12-53 . The CBA was ratified at a meeting in Toronto. *See* Ex. 1, Kim at ¶ 26; Ex. 6, Saskin at ¶¶ 19-24. None of the events challenged in the Complaint took place in Illinois. *See* Ex. 5, Linden at ¶ 10; Ex. 6, Saskin at ¶¶ 12-13.

The parties have minimal, if any, connections to Illinois. The NHLPA's offices, books, records, bank accounts and all other assets are located in Toronto. *See* Ex. 1, Kim at ¶¶ 5-6. All of its employees reside in Canada. *See id.* at ¶ 4. The individual defendants are not subject to personal jurisdiction in Illinois and own no assets here. Saskin, Boughner, Damphousse and Linden all reside in Canada, while Guerin resides in Missouri. *See* Compl. at ¶¶ 8-12. Similarly, plaintiffs have no meaningful Illinois connections. Klatt resides in Minnesota and Roloson resides in Canada. *See* Compl. at ¶¶ 5-6. While Chelios may own property in Illinois, he has

---

[1] Although we have not provided duplicative citations, the declarations of the other individual defendants confirm the facts for which the Saskin or Linden declaration are cited throughout.

notified the NHLPA that he has Bloomingfield Hills, Michigan (in-season) and Malibu, California (off-season) addresses. *See* Ex. 1, Kim at ¶ 11, Ex. 6, Saskin at ¶ 14.

In short, an Ontario court has a far superior interest in resolving this dispute. All of the relevant forum non conveniens factors weigh heavily in favor of dismissal. This Court, therefore, should decline jurisdiction over this case in favor of an Ontario forum.

**II.     THE CASE SHOULD BE DISMISSED UNDER FORUM NON CONVENIENS**

Dismissal under forum non conveniens is appropriate "where the trial in the plaintiff's chosen forum imposes a heavy burden on the defendant or on the court, and where the plaintiff is unable to offer any specific reasons of convenience supporting his choice." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 249 (1981). The forum non conveniens analysis involves two steps: (1) the court must determine whether the alternative forum is adequate and (2) the court must balance all relevant public and private interest factors to determine the proper forum. *In re Bridgestone/Firestone, Inc.*, 420 F.3d 702, 703 (7th Cir. 2005). The Court has substantial discretion in weighing these factors. *Van Cauwenberghe v. Biard*, 486 U.S. 517, 529 (1988).

Here, no careful balancing of these factors is required. All factors weigh heavily in favor of dismissing this case in favor of an Ontario forum.

**A.     Ontario, Canada is an Adequate Alternative Forum**

The first step in the forum non conveniens analysis is to confirm that Ontario is an adequate forum. There are two components to this analysis. First, all parties must be amenable to process in Ontario. *In Re Bridgestone/Firestone*, 420 F.3d at 704. Second, the Court must confirm that the parties will not be "deprived of all remedies or treated unfairly." *Id.* Under both prongs of this test, Ontario is adequate.

All defendants are amenable to process and subject to the jurisdiction of Ontario courts. The NHLPA is headquartered in Toronto. *See* Ex. 1, Kim at ¶ 5. Saskin and Damphousse

3

currently work for the NHLPA in Ontario. *See* Ex. 3, Damphousse Decl. at ¶ 7; Ex. 6, Saskin at ¶8. Boughner is an Ontario resident. *See* Ex. 2, Boughner Decl. at ¶ 2. Each defendant who does not live in Ontario has confirmed that he will consent to the jurisdiction of an Ontario court. *See, e.g., Kamel v. Hill-Rom Co.*, 108 F.3d 799, 803 (7th Cir. 1997) (forum adequate where defendant consents to jurisdiction).[2] Thus, Ontario is an available forum.

In addition, plaintiffs will not be deprived of a remedy or treated unfairly in Ontario. The attached declaration of the Honourable Allen Austin explains that plaintiffs could assert the same type of claims that they seek here in an Ontario court. For example, plaintiffs can assert claims for breach of the NHLPA constitution, fraud, conversion, breach of fiduciary duty and accounting. *See* Ex. 7, Austin Decl. at ¶ 16-38. Ontario law provides plaintiffs with a full range of remedies including damages, punitive damages and injunctive relief. *See id.* at ¶¶ 38-44.

While LMRDA claims *per se* might not be available in Ontario, plaintiffs could pursue similar claims under common law or with the Ontario Labour Board. *See id.* at ¶ 19-21, 31-33. (In any event, if the case remains here, defendants would demonstrate that the LMRDA does not apply to the activity of a Canadian labor organization that took place in Canada. *Cf.* Exs. 8,9, DOL letters confirming lack of jurisdiction over the NHLPA under LMRDA, Title II.) The availability of equivalent remedies is enough; forum non conveniens does not require the remedies to be identical. S*ee, e.g., Piper Aircraft*, 454 U.S. at 254-55 (Scottish forum adequate even though strict liability theory was unavailable and damages award could be smaller); *Kamel*, 108 F. 3d at 803 (dismissal appropriate "even though the foreign forum does not provide the same range of remedies as are available in the home forum"). Ontario, therefore, is clearly an adequate forum.

---

[2] *See* Ex. 3, Damphousse Decl. ¶ 40; *See* Ex. 4, Guerin Decl. at ¶ 41; *See* Ex. 5, Linden at ¶ 41. *See also Gullone v. Bayer Corp.,* 408 F. Supp. 2d 569, 576 (N.D. Ill. 2006) (consent to jurisdiction).

4

105947v1

### B. Public Interests Weigh in Favor of Dismissal

The Court must also consider factors of public interest in the forum non conveniens analysis. Relevant public interest factors[3] include: (1) the local interest in having localized disputes decided at home; (2) the avoidance of unnecessary problems in conflicts of laws or in the application of foreign law; and (3) the unfairness of burdening citizens in an unrelated forum with jury duty. *See In re Bridgestone/Firestone*, 420 F.3d at 703. Here, the relevant public interest factors weigh overwhelmingly in favor of a Canadian forum.

#### 1. Ontario has a far superior interest in this dispute.

Canada has a powerful interest in the resolution of this dispute. Canada has a clear interest in regulating its own labor organizations, activity that occurs within its borders and the conduct of its residents, several of whom are charged with wrongdoing in the Complaint. S*ee, e.g., Intec USA LLC v. Engle*, No. 05-C-6171, 2005 U.S. Dist. Lexis 33365, at *5 (N.D. Ill. Dec. 13, 2005) (New Zealand had a strong interest in regulating purported misconduct by its residents and in policing the activities of its corporations), *vacated on other grounds* in *Intec USA LLC v. Engle*, No. 06-1117, 2006 App. Dist. Lexis 27165 (7th Cir. Nov. 2, 2006). The NHLPA is a Canadian labor association organized under Ontario law. *See* Ex. 6, Saskin at ¶ 9. The business activities of the NHLPA occur almost exclusively in Canada. *See* Ex. 1, Kim at ¶ 7. The NHLPA maintains its only office, its books, records and all of its assets in Toronto. *See id.* at ¶¶ 4-6. All of its employees reside in Canada and its Executive Board and Executive Committee regularly hold meetings in Canada. Any meetings in Illinois are sporadic (and unrelated to the

---

[3] Another public interest factor is the relative congestion of courts in the alternative fora. While Ontario courts are generally less congested than courts here, we have not discussed that factor given the pace at which cases move before this particular Court. In addition, in diversity cases, courts consider "the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action." *See Piper Aircraft*, 454 U.S. at 241 n.6. Because this factor overlaps with the difficulty that a U.S. court faces in applying Canadian law, we do not discuss it separately.

5

claims at issue here). *See id.* at ¶ 4, 17, 18; Ex. 6, Saskin at ¶ 9, 13, 55.  Ted Saskin, the current NHLPA Executive Director, lives in Toronto and operates out of the NHLPA's office in Toronto.  *See* Ex. 6, Saskin at ¶¶ 2, 9 .  As noted earlier, most of the other parties are located in Canada, including defendants Boughner, Linden and Damphousse and plaintiff Roloson.

Each of the alleged events that give rise to the claims took place in Canada.  *See* Ex. 5, Linden at ¶¶ 10-36; Ex. 6, Saskin at ¶¶ 12-53.  (These facts are set forth in more detail in the Individual Defendants' Motion to Dismiss for Lack of Personal Jurisdiction at pp. 1-8.)  Toronto was the location of Goodenow's separation and the negotiation of his severance (Ex. 5, Linden at ¶¶ 20-22; Ex. 6, Saskin at ¶¶ 25-29), Saskin's hiring (Ex. 5, Linden at ¶¶ 23-24; Ex. 6, Saskin at ¶¶ 31-35), Saskin's contract negotiation (Ex. 6, Saskin at ¶ 42), ratification of the CBA and creation of the information packets provided to NHLPA members concerning the CBA (Ex. 5, Linden at ¶¶ 15-19; Ex. 6, Saskin at ¶20).  Most of the NHLPA meetings at issue were held in Toronto or elsewhere in Canada, with none in Illinois.  *See* Ex. 5, Linden at ¶¶ 16, 21, 23, 26, 30, 34; Ex. 6, Saskin at ¶¶ 13, 20, 26, 28, 31, 42, 49.  The collective bargaining negotiations at issue took place in Canada or New York.  *See* Ex. 5, Linden at ¶ 14; Ex. 6, Saskin at ¶¶ 16-17.

Illinois' interests, on the other hand, are negligible.  None of the alleged misconduct took place in Illinois (as confirmed by the absence of any well pled allegations of Illinois activity in the complaint).  The impact of the alleged conduct in Illinois is de minimus (especially when compared to the Canadian impact).  Out of 723 NHL players in total, only 7 players list an Illinois residence during the off season.  *See* Ex. 1, Kim at ¶ 9.  With the alleged exception of Chelios (who lists only Detroit and California addresses with the NHLPA), none of the parties are Illinois residents. Compl. ¶¶ 5-12.

Accordingly, the interest of an Ontario court in adjudicating this matter far outweighs any interest of Illinois and weighs heavily in favor of dismissal. *See, e.g,. Piper Aircraft*, 454 U.S. at 260 ("there is a local interest in having localized controversies decided at home"); *Dekoven v. Knight Frank, LLP*, No. 05C3920, 2005 U.S. Dist. Lexis 23290, at *13 (N.D. Ill. Oct. 12, 2005) (England had greater interest since defendant was an English company, the transaction at issue took place almost entirely in England, and harm to British citizens was greater than to citizens of Illinois).

### 2. The need to apply Canadian law weighs in favor of dismissal.

A court has an interest in not having "to delve into the tenets of an unfamiliar legal system." *Kamel*, 108 F.3d at 805. Thus, the need to apply foreign law weighs in favor of dismissal under forum non conveniens. *Piper Aircraft*, 454 U.S. at 260 (citing *Gulf Oil Comp. v. Gilbert*, 330 U.S. 501 (1997), where court "explicitly held that the need to apply foreign law pointed toward dismissal").[4]

We expect plaintiffs to concede that Canadian law governs their claims. In fact, during the July 2006 meeting of the NHLPA in Canada (Compl. at ¶48), plaintiff Chelios indicated that he had retained a Canadian lawyer and argued that the NHLPA constitution was governed by Canadian law. *See* Ex. 6, Saskin at ¶ 50. Plaintiff's concession is correct.

Illinois choice of law rules apply in this action. *Smurfit Newsprint Corp. v. Southwest Paper Mfg.*, 368 F.3d 944, 949 (7th Cir. 2004). There are two broad categories of claims alleged in the Complaint: breach of contract (i.e. the NHLPA constitution) and various torts. Under Illinois choice law of law principles, those claims are governed by Canadian law.

---

[4] *See also, e.g., Sandstrom v. Cultor Food Science, Inc.*, No. 97C8261 (N.D. Ill. June 9, 1998) 1998 U.S. Dist. Lexis 9034, at *17 (applied public interest factors favored dismissal because of foreign law applied); *Hull 753 Corp. v. Elbe Flugzeugwerke*, 58 F. Supp. 2d 925, 930 (N.D. Ill. 1999) (same).

7

Canadian law governs plaintiffs' claim that defendants breached the NHLPA Constitution. Indeed, under the "most significant contacts" test applicable to breach of contract claims in Illinois, each factor mandates the application of Canadian law:

**Place of Contracting and Negotiating:** The NHLPA Constitution was adopted in Toronto in 1967. *See* Ex. 1, Kim at ¶ 3.

**Place of Performance:** The Constitution is performed by the NHLPA, which is located in Toronto. The NHLPA's business activities occur almost exclusively in Toronto. *See id.* at ¶ 7. The "performance" at issue – interim elections, Saskin hiring, Goodenow separation, CBA ratification – all took place in Canada. *See* Ex. 5, Linden at ¶¶ 12, 14, 16, 21, 23, 34; Ex. 6, Saskin at ¶¶ 16, 17, 20, 26, 31, 38, 49. Nothing took place in Illinois.

**Location of Subject Matter of the Contract:** The subject matter of the Constitution is the NHLPA, which is located in Toronto, conducts its business operations occur almost exclusively there. *See* Ex. 1, Kim at ¶¶ 3-7.

**Domicile of the Parties:** The NHLPA was formed in Toronto, organized under the laws of Ontario and is headquartered there. *See* Ex. 6, Saskin at ¶ 9. The individual parties do not reside in the same jurisdiction, but most reside in Canada. Out of more than 720 NHLPA members, only 7 list an off-season Illinois address. *See* Ex. 1, Kim at ¶ 9. Over 350 players list an address in Canada, and more than 160 players list a summer address in Ontario. *See id.* at ¶ 9.

*See Certain Underwriters Lloyds, London v. Argonaut Ins. Co.*, 444 F. Supp. 2d 909, 921 (N.D. Ill. 2006) (identifying factors). In order to resolve plaintiffs' breach of contract claim, therefore, the Court would be forced to apply Canadian law and "delve into the tenets of an unfamiliar legal system." *Kamel*, 108 F.3d at 805.

The same holds true for plaintiffs' tort claims. Illinois uses a most significant relationship approach to determine choice of law in tort cases. *See Toriumi v. The Ritz-Carlton*

105947v1

*Hotel Co., LLC,* No. 06C1720, 2006 U.S. Dist. Lexis 82324, at *9 (N.D.Ill. Oct. 27, 2006). Once again, each relevant factor dictates the application of Canadian law:

> **Location of the Injury:** It is difficult to decipher the "injury" from plaintiffs' complaint. If the injury is purported monetary injury (e.g. resulting from the Saskin and Goodenow contracts) that injury is located in Canada. These payments were made by the NHLPA from its bank accounts in Toronto. *See* Ex. 1, Kim at ¶ 6. The NHLPA has no assets in Illinois. *See id.* If the injury relates the business of the NHLPA, that business is conducted in Toronto.
>
> **Where the Injury-Causing Conduct Occurred:** As discussed previously, the events giving rise to plaintiffs' claims took place exclusively in Canada.
>
> **Domicile of the Parties:** As noted in connection with the breach of contract claim, Ontario is the domicile of most of the parties and a significant percentage of NHLPA members. Illinois' only connection is Chelios, who notified the NHLPA that he lives in Michigan and California.
>
> **Where the Relationship Between the Parties is Centered:** The relationship is centered in Toronto, where the NHLPA is headquartered. The NHLPA conducts the vast majority of its business in Canada, including its annual player meetings. *See id.* at ¶ 13. The events at issue took place in Canada.

In short, if this case is litigated here, this Court would be required to apply and interpret the laws of Ontario. This factor favors dismissal in favor of an Ontario forum, where the court and lawyers are better equipped to undertake such an analysis.

### 3. Burdens associated with jury duty.

Given Illinois' lack of interest in this dispute, it would be inappropriate to burden Illinois citizens with jury duty in this case. Given the presence of Ontario residents as parties and the allegations of wrongdoing in Ontario, Canadians have a keen interest in having the case tried there. Thus, this public interest factor favors dismissal. *See Dekoven*, 2005 U.S. Dist. Lexis

9

23290 at *15 (case should not be imposed upon Illinois jury when it was governed by foreign law and Illinois had no significant relationship to the litigation).

C.     **Private Interests Weigh in Favor of Dismissal**

In addition to the public interest factors, the relevant private interest factors weigh heavily against an Illinois forum and demonstrate that Ontario is superior.  Relevant private interest factors[5] are (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling witnesses; (3) the cost of obtaining attendance of willing witnesses; and (4) other practical problems associated with the competing jurisdictions. *See In re Bridgestone/Firestone*, 420 F.3d at 703.

1.     **Most of the parties are not subject to jurisdiction in Illinois.**

The individual defendants have no meaningful connections to Illinois.  As noted, each has moved to dismiss the claims against him for lack of personal jurisdiction.  If those motions are successful, this forum obviously would be inferior since all of the parties could not be joined in this action.  *See, e.g., Piper Aircraft* 454 U.S. at 259 (trial court's lack of jurisdiction over key parties weighed in favor of dismissal).

2.     **Virtually all of the key witnesses are located in Ontario or outside Illinois and could not be compelled to testify here.**

"The main factor in assessing the private interests is the convenience of the witnesses." *Intec* at *3.  Practically all of the witnesses in this case reside in Ontario, other locations in Canada, or outside of Illinois.  This factor, therefore, strongly favors a trial in Ontario and shows that Illinois is far from a convenient forum.  *See, e.g., Dekoven*, 2005 U.S. Dist. Lexis 23290, at *11 (fact that all witnesses but two were in England demonstrated Illinois was an inconvenient forum).

---

[5] Courts also consider the possibility of viewing the premises, a factor not relevant here.

10
105947v1

The individual defendants are important witnesses. Even if the Court decides that it has personal jurisdiction, Illinois stands as a decidedly inconvenient forum. Canada is far more convenient, as each defendant is located there (except Guerin, who resides in Missouri). *See* Compl. ¶¶ 8-12.

Even when evaluating the residency of plaintiffs, Illinois has no advantage as the forum for this dispute. Plaintiff Roloson lives in Canada and plaintiff Klatt lives in Minnesota. *See* Compl. ¶¶ 5-6. As noted above, Chelios lists Detroit and Malibu addresses with the NHLPA. Moreover, Chelios is the least important of the parties: he was not on the NHLPA's Executive Committee or Executive Board during the relevant time period. *See* Ex. 1, Kim at ¶ 22. As such, he had no role whatsoever in CBA negotiations, the termination of Goodenow or the hiring of Saskin.

More importantly, Ontario is also a far more convenient forum than Illinois for third party witnesses. Likely key witnesses include Daniel Alfredsson, a former Executive Committee member who lives on Ontario. Many current and former NHLPA employees were involved in a host of issues including the Goodenow and Saskin contract negotiations, CBA negotiations and the key NHLPA business activities at issue. Those individuals include Mike Gartner, Stu Grimson, Ian Penny, Roland Lee and Jeff Citron. Each of those individuals is located in Ontario. *See id.* at ¶¶ 4, 21.

Various NHL Executive Board members are also likely to be important witnesses. These witnesses are familiar with CBA ratification, Goodenow's departure, Saskin's hiring, election of interim officers and compliance with the NHLPA Constitution. Toronto is a far more convenient forum for those individuals. Of the 76 players who have served on the NHLPA's Executive Board or Executive Committee at any point from the beginning of the 2004 lockout to

11

105947v1

present, 41 players list an address in Canada. *See id.* at ¶ 20. Only two players list an Illinois address during any part of the year. *See id.* at ¶ 20. Both of those are Blackhawk players who are Canadian citizens and list off-season addresses in Canada. *See id.* at ¶ 20. *See also* Ex. 10 at Nos. 19 to 54.

The parties' Rule 26 disclosures confirm beyond a doubt that Toronto is more convenient. The NHLPA's Rule 26 disclosures identify 28 potential third party witnesses[6] located in Ontario and 13 additional witnesses located elsewhere in Canada. (Ex. 10.) The remaining witnesses are located in other U.S. locations. None are located in Illinois.

Plaintiffs' Rule 26 disclosure also supports dismissal in favor of Ontario. In addition to the parties (most of whom are in Ontario), plaintiffs identify three third party witnesses: Don Meehan, Ian Pulver and Bob Goodenow. (Ex. 11.) Meehan and Pulver are Ontario residents. *Id.* Although Goodenow may have left Toronto, he was resident in Toronto as former Executive Director of the NHLPA when most of the relevant events took place. Plaintiffs do not identify a single Illinois witness. Thus, Ontario is a superior forum even when evaluating the witnesses plaintiff will call at trial.

The Canadian witnesses, as well as witnesses located in the U.S. but outside Illinois, are outside this Court's subpoena power. The parties would not be able to compel their live testimony at trial. *See McDonald's Corp. v. Bukele*, 960 F. Supp. 1311, 1318 (N.D. Ill. 1997) (the court lacked ability to compel testimony from witnesses outside of U.S.). Any willing witnesses would be forced to travel to Illinois from Canada and other locations. The witnesses and parties would incur significant expense as a result.

---

[6] The NHLPA's Rule 26 disclosures are broad given the expansive and vague allegations in the Complaint.

This factor weighs strongly in favor of dismissal. In cases involving fraud claims, "live testimony is of utmost importance" and "the fact finder [should] have the benefit of demeanor testimony of witnesses." *Pyrenee, Ltd. v. Wocom Commodities, Ltd.*, 984 F. Supp. 1148, 1166 (N.D. Ill. 1997). If the case were to proceed in Illinois, the Court would be faced with a trial by deposition after costly and lengthy discovery. A trial with live witnesses in Canada would be far more fair, effective and efficient.

### 3. Access to Proof

Along with most of the witnesses, the majority of documentary evidence is also in Ontario. All of the books, records, and bank accounts of the NHLPA are located in Canada. *See* Ex. 1, Kim at ¶¶ 5-6. Although the allegations of the Complaint are far from clear, we are aware of no evidence that is located in Illinois. Again, the need to travel to Canada to review and assemble documentary evidence would add needless time and expense to the litigation of this matter. *See, e.g., Dekoven*, 2005 U.S. Dist. Lexis 23290, at *10.

### 4. **Dismissal is appropriate because, even if this Court decided the merits, plaintiffs would have to appear in a Canadian court to obtain any remedy.**

Plaintiffs' claim for injunctive relief creates practical problems that weigh in favor of dismissal. It would be virtually impossible for this Court to implement, over international borders, the injunctive relief that plaintiffs seek. For example, plaintiffs have asked for the removal of Saskin as Executive Director, the appointment of a Trustee to supervise union business and an accounting.[7] *See* Compl. ¶¶ 1-4 at p. 20. The Court would find it impossible to supervise the activities of a foreign labor organization; the plaintiffs would have to enlist a Canadian court in this effort. *See, e.g., Panama Processes, S.A. v. Cities Serv. Co.*, 650

---

[7] The NHLPA does not concede that such relief is available or appropriate.

F.2d 408, 414 (2d Cir. 1981) (dismissal appropriate, in part, because relief sought would require a court to supervise foreign corporation). [8]

Plaintiffs' request for damages creates similar problems. Plaintiffs claim at least $8,000,000 in damages. The NHLPA, as well as the individual defendants, have no assets in Illinois. *See* Ex. 1, Kim at ¶ 6; Exs. 2-6, ¶¶ 4, 6. Even if this Court were to retain jurisdiction and award plaintiffs relief, plaintiffs would be forced to file an action in a Canadian court to enforce any judgment.

Thus, even if plaintiffs could prove their claims (they will not), their decision to file in Illinois virtually guarantees duplicative litigation because plaintiffs would have to appear in a Canadian court to obtain relief. This factor weighs conclusively in favor of dismissal. *See e.g., ISI Int'l, Inc. v. Borden Lander Gervais LLP*, 316 F.3d 731, 733 (7th Cir. 2003) (affirming dismissal because a Canadian court would have to enforce any eventual judgment); *N. Am. Promotions, Ltd. v. Ficodesa*, No. 03C5010, 2003 U.S. Dist. Lexis 20141, at *9-10 (N.D. Ill. Nov. 7, 2003) (dismissal appropriate because plaintiffs would have to appear in Spanish court to enforce a judgment); *Intec, USA LLC,* 2005 U.S. Dist. Lexis 33365, at *10 (plaintiff's request for injunctive relief favored dismissal because enforcement would be in New Zealand).

### D.  Plaintiffs' Choice of Forum is Entitled to Little Weight

Plaintiffs' choice of forum, typically afforded deference, is not entitled to such treatment here. Although the Complaint is confusing at best, plaintiffs appear to be asserting a derivative claim on behalf of all NHLPA members. *See Compl*. at ¶ 62. An Illinois forum is not entitled to deference in a derivative action seeking relief for individuals who virtually all reside outside

---

[8] *See also Event News Network, Inc. v. Thill,* No. 05 C 2972, 2005 U.S. Dist. Lexis 26643, at *20 (N.D. Ill. Nov. 2, 2005) (need to enforce injunctive relief in Missouri favored transfer.)

14

of this forum. *Boyd v. Snyder*, 44 F. Supp. 2d 966, 969 (N.D. Ill. 1999) ( plaintiff's choice of forum is given less weight when the plaintiff sues derivatively).

Even setting aside the derivative nature of the claims, Illinois is not the home forum for plaintiffs Roloson and Klatt. Chelios' claim of Illinois residency is suspect. Thus, plaintiffs seemingly random decision to litigate in Illinois is entitled to little deference. *Pliva D.D. v. Baxter Int'l Inc.*, No. 03 C 7371, 2004 U.S. Dist. Lexis 16977, at *14 (N.D. Ill. Aug. 24, 2004) ("Where the plaintiff does not choose his home forum they are entitled to less deference."); *Gullone*, 408 F. Supp. at 582 (same).

Finally, the public and private interest factors overwhelmingly demonstrate that Illinois is not a convenient forum. In such circumstances, courts afford less deference to a plaintiffs' choice of forum. *See Pliva*, 2004 U.S. Dist. Lexis 16977, at *17; *Sandstrom*, 1998 U.S. Dist. Lexis 9034, at *17.

### III.  CONCLUSION

As explained above, Canada has a significant interest in this litigation. Illinois has none. Litigating such a case in Illinois would create unnecessary burdens on the Court, the parties and the witnesses, none of whom are located in Illinois. For these reasons, the Court should dismiss this case under the doctrine of forum non conveniens.

Dated:  November 30, 2006            Respectfully submitted,


                                     By: /s/ Michael P. Conway
                                         One of Its Attorneys

                                     Michael P. Conway
                                     Patrick Malone
                                     GRIPPO & ELDEN LLC
                                     111 South Wacker Drive
                                     Chicago, Illinois 60606
                                     Phone: (312) 704-7700

105947v1