# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## OF THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| CHRIS CHELIOS, DUANE ROLOSON, and TRENT KLATT, | ) ) ) | Case No. 06 CV 5333 Judge Conlon |
| Plaintiffs, | ) ) | Magistrate Judge Nolan |
| v. | ) ) |  |
| NATIONAL HOCKEY LEAGUE PLAYERS' ASSOCIATION, TED SASKIN, TREVOR LINDEN, VINCENT DAMPHOUSSE, BOB BOUGHNER, and BILL GUERIN, | ) ) ) ) ) ) |  |
| Defendants. | ) |  |

### DECLARATION OF KEN KIM

I, Ken Kim, declare as follows:

1.    This declaration is based on my personal knowledge and I am otherwise competent to testify regarding these matters.

2.    I am Senior Director, Business at the National Hockey League Players' Association (the "NHLPA").

### NHLPA Background

3.    The NHLPA is governed by the Constitution and By-laws of the NHLPA, a copy of which is attached as Exhibit A. The current version of the NHLPA Constitution was created and adopted in Toronto no later than January, 1990.

4.    The NHLPA has approximately thirty-five employees. All of its employees work and reside in Canada. None of its employees work or reside in the U.S.

- 1 -

5.    The NHLPA maintains its books and records at its headquarters in Toronto.

6.    The NHLPA maintains its bank accounts in Canada. It does not maintain any bank accounts in the U.S. All of the NHLPA's assets are in Toronto. The NHLPA does not have any assets in Illinois.

7.    The business activities of the NHLPA occur almost exclusively in Canada. While the NHLPA has some agreements with U.S. companies (unrelated to this lawsuit), the NHLPA's practice is to include Ontario choice of law and choice of venue provisions in such contracts.

**NHLPA Member Information**

8.    The NHLPA maintains certain member information, including the in-season and off-season residential addresses. Given the importance of player communication, the NHLPA devotes efforts to making sure that these lists are accurate.

9.    While some players play for the Chicago Blackhawks, only a small percentage of NHLPA members list Illinois as a residence. Out of the 723 NHL players in total, only seven players list an Illinois residence during the off-season (approximately 1%), and 26 players (with the Chicago Blackhawks) reside in Illinois during the season (approximately 4%). Approximately 355 current NHL players list an address in Canada and over 160 of those players have an off-season address in Ontario.

10.    Plaintiff Roloson plays for the Edmonton Oilers and has an Ontario off-season address on file with the NHLPA.

11.     Plaintiff Chelios plays for the Detroit Red Wings. He has a Bloomfield Hills, Michigan in-season address and a Malibu, California off-season address listed with the NHLPA.

12.     The NHLPA maintains information for its players' certified agents, including their business addresses. Five out of the 153 certified agents list an Illinois business address with the NHLPA. Over sixty certified agents list a Canadian business address with the NHLPA.

13.     Canada has been the location for almost all of the annual Players' meetings at which elections are held. With the exception of a 2003 annual meeting in California, every annual North American meeting since 2000 has been held in Canada (the NHLPA holds separate meetings in Europe for European players). There has never been an annual Players' meeting in Illinois.

## NHLPA Officers and Executive Director

14.     The members of the NHLPA (who are NHL hockey players) elect other members to serve as Officers, including a President and Vice-Presidents (the "Officers"). Officers are not paid by the NHLPA for their service.

15.     The NHLPA has an Executive Director (who, unlike the Officers, is not a hockey player). Robert Goodenow served as the Executive Director from 1991 until July 28, 2005. From July 28, 2005 through the present, Ted Saskin has served as the Executive Director. The employment contracts for both Goodenow and Saskin as Executive Director were negotiated and executed in Toronto. These contracts have a choice of law clause that provides for the application of Canadian law.

- 3 -

## NHLPA Executive Board and Executive Committee

16.     The NHLPA has an Executive Committee.   The Executive Committee is comprised of the Officers and the Executive Director.

17.     The Executive Committee holds meetings to discuss the business of the NHLPA in Toronto.  The Executive Committee also has regular conference calls to discuss the business of the NHLPA, which are placed from Toronto.

18.     The NHLPA has an Executive Board.  The Executive Board is comprised of the Officers, the Player Representatives, and the Executive Director.

19.     The Executive Board holds meetings to discuss the business of the NHLPA. These meetings are typically held in Canada.  The Executive Board also has regular conference calls to discuss the business of the NHLPA, which are placed from Toronto.

20.     Seventy-six players have served on the Executive Board at any point from the beginning of the 2004 lockout to the present.  Forty-one of these players list an address in Canada.  Only two of these players currently list an Illinois address during any part of the year. Both of those are Blackhawk players who are Canadian citizens and list off-season addresses in Canada.

21.     Daniel Alfredsson, who is a non-party, has been a member of the Executive Committee from 2004 to present.  Alfredsson resides in Ottawa, Ontario, Canada.  Arturs Irbe, who is a non-party, was a member of the Executive Committee during the 2004-05 lockout. Irbe, a retired player, lives in Latvia.

- 4 -

22.    Plaintiff Klatt, a retired player, was also a member of the Executive Committee during the 2004-05 lockout. Plaintiff Roloson was not a member of the Executive Committee, but was on the NHLPA Executive Board from 2004 through 2006. Plaintiff Chelios was not a member of the Executive Committee or the Executive Board during the lockout (2004-05) or during the 2005-06 season, the time period of the events alleged in his Complaint.

## Plaintiffs' Factual Allegations

### a.    CBA Negotiations

23.    Plaintiffs make allegations about collective bargaining negotiations between the NHLPA and the NHL during July 2005 and about the NHLPA's agreement to a CBA with a salary cap, which occurred in July 2005. (Compl. ¶¶ 29-30, 53).

24.    The NHLPA was involved in a protracted labor dispute with the NHL, which forced cancellation of the 2004-2005 NHL hockey season. The dispute was settled with the ratification of a new collective bargaining agreement (the "CBA") on July 22, 2005.

25.    As plaintiff Chelios was not on the Executive Committee, he had no role in the CBA negotiations.

### b.    CBA Ratification

26.    A meeting to ratify the current NHL/NHLPA Collective Bargaining Agreement was held in Toronto on July 20-21, 2005. A total of 228 players attended the meeting in Toronto. Plaintiffs Klatt and Roloson attended the meeting. Plaintiff Chelios did not attend, but called into the meeting.

27.     Information about the CBA was created in Toronto and employees in Toronto placed this information on the NHLPA's secure website.

### c.     Approval of Saskin's Terms of Employment

28.     Plaintiffs make various allegations about an Executive Board conference call held "on or about August 30, 2005," regarding Saskin's appointment and contract. (Compl. ¶¶ 44-45).

29.     The Executive Board conference call at issue was organized from Toronto, not from Illinois. No player who participated in the call called in from Illinois.

### d.     Election of Interim Officers

30.     The NHLPA elected interim officers during a meeting held on July 10-12, 2006 in Whistler, British Columbia, Canada. Forty NHLPA members attended this meeting. Twenty-six of those players resided in Canada. None of the players attending had an Illinois summer address, although two (both Canadian citizens) play for the Chicago Blackhawks.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

EXECUTED on this _29th_ day of November, 2006 at Toronto, Ontario, Canada.

Ken Kim

- 6 -

# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION

CHRIS CHELIOS, DUANE ROLOSON,
AND TRENT KLATT,

        Plaintiffs,

    v.

NATIONAL HOCKEY LEAGUE PLAYERS
ASSOCIATION, TED SASKIN, TREVOR
LINDEN, VINCENT DAMPHOUSSE,
BOB BOUGHNER, and BILL GUERIN,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 06C 5333
Judge Conlon

Magistrate Judge Nolan

## DECLARATION OF BOB BOUGHNER

I, Bob Boughner, declare as follows:

1.    This declaration is based on my personal knowledge and I am otherwise competent to testify regarding these matters.

### Personal Information

2.    I am a Canadian citizen. My principal residence is in Tecumseh, Ontario. I have lived there since 2000. During my career in the NHL, I would also have a residence in the metropolitan area of the team I was playing for at the time. I most recently played for the Colorado Avalanche.

3.    I never played for the Chicago Blackhawks and I have never resided in Illinois.

4.     I have never owned real estate in Illinois and have never had a bank account in Illinois.

5.     I have never worked for an employer based in Illinois.

6.     I have never owned a business located in Illinois, owned a business with any employees based in Illinois, or owned a business that made sales in Illinois.

7.     I played in the NHL from the 1995-96 season through the 2003-04 season and in 2005-06. The 2004-05 season was wiped out by the NHL lockout. I retired from the NHL after the 2005-06 season.

8.     I was a member of the NHLPA's Executive Committee from June 2002 through my retirement after the 2005-06 season. I was first elected to the Executive Committee at the 2002 NHLPA annual Players' meeting in Mt-Tremblant, Quebec, Canada. The Executive Committee had responsibility and authority for collective bargaining with the NHL.

9.     On September 15, 2004, the NHL began a lockout of the NHL Players. Plaintiff Trent Klatt was a member of the Executive Committee during the lockout. So were non-parties Daniel Alfredsson and Arturs Irbe.

## Plaintiffs' Factual Allegations

10.     I read plaintiffs' complaint ("Cplt."), and focused on the factual allegations made in Cplt. ¶¶ 29-50, 53, 58-62. To the best of my knowledge, none of the events alleged in the complaint took place in Illinois.

### a.     CBA Negotiations

11.     Plaintiffs make allegations about collective bargaining negotiations between the NHLPA and the NHL during July 2005 and about the NHLPA's agreement to a CBA with a salary cap, which allegedly occurred in July 2005. (Cplt., ¶¶ 29-30, 53.)

-2-

12.     There were collective bargaining negotiations between the NHLPA and the NHL during July 2005. None of those negotiations took place in Illinois.

13.     The NHL and the NHLPA did agree on a CBA with a salary cap. The NHL and NHLPA did not come to that agreement in Illinois.

14.     As a member of the Executive Committee, I participated in many days of collective bargaining meetings between the NHLPA and the NHL. All of those meetings occurred in Toronto or in New York. I did not participate in any collective bargaining meetings with the NHL in Illinois. Plaintiff Trent Klatt was at most, if not all, of the meetings I attended.

### b.     CBA Ratification

15.     Plaintiffs make various allegations about the players' CBA ratification meeting. (Cplt. ¶¶ 31-33)

16.     The players' CBA ratification meeting was held in Toronto on July 20-21, 2005. I attended the meeting, along with a few hundred other players. So did plaintiff Klatt.

17.     As part of the overall players' ratification meeting, we held meetings for each team. Each team meeting included players who were present in Toronto and other players on the team who participated by conference call.

18.     The ratification vote was conducted electronically on July 21. The votes were compiled and the result was announced in Toronto the same day.

19.     We had two other "all-player" meeting during the lockout. Both were held in Toronto (on November 1-2, 2004 and on February 28-March 1, 2005). I attended both.

### c.     Removal and Buy-Out of Goodenow

20.     Plaintiffs make various allegations about actions taken "prior to July 28, 2005," regarding the "removal and buyout" of Bob Goodenow as Executive Director of the NHLPA. (Cplt., ¶¶ 34-35, 53.)

-3-

21.     On July 21, 2005, I participated in an Executive Committee meeting on this topic in Toronto. So did plaintiff Trent Klatt. The meeting did not occur in Illinois.

22.     I later discussed this topic on conference calls with members of the Executive Board. I never participated in those calls from Illinois.

### d.     Appointment of Saskin

23.     Plaintiffs make various allegations concerning the appointment of Ted Saskin as Executive Director of the NHLPA "on or about July 28, 2005." On July 21, 2005, I participated in an Executive Committee meeting on this topic in Toronto. So did plaintiff Trent Klatt. The meeting did not occur in Illinois.

24.     On July 28, 2005, Bob Goodenow and Ted Saskin appeared at an NHLPA press conference in Toronto announcing Goodenow's resignation as Executive Director and Saskin's appointment to succeed him. After the press conference, I participated in an Executive Board conference call on the topic. I did so from my home in Ontario, not from Illinois.

25.     Plaintiffs make various allegations about a "secret ballot election" with "a mail-in ballot." (Cplt., ¶¶ 37-39.) The decision to hold a secret ballot election was made in September 2005 during a conference call with the Executive Board. I participated in that call from my residence in Colorado, not from Illinois.

26.     I participated in other conference calls with the Executive Board regarding Saskin's retention as Executive Director and his employment contract. To the best of my recollection, I was not in Illinois for any of those calls.

### e.     Saskin's E-mail to Linden

27.     Plaintiffs make various allegations about an e-mail that Saskin sent to NHLPA President Trevor Linden "on or about August 17, 2005." (Cplt., ¶¶ 40-43.)

28.     I saw that e-mail at some point after August 17. I was in Colorado at the time. I was not in Illinois.

### f.     Approval of Saskin's Terms of Employment

29.     Plaintiffs make various allegations about an Executive Board conference call held "on or about August 30, 2005" regarding Saskin's appointment and contract.

30.     I participated in an Executive Board conference call on that topic "on or about August 30, 2005." I was in Colorado at the time. I was not in Illinois.

### g.     Use of NHLPA Funds

31.     Plaintiffs make various allegations that Saskin used NHLPA funds to "campaign" for the post of Executive Director and for "excessive compensation." (Cplt., ¶¶ 46-47.)

32.     I do not know what plaintiffs are talking about here but I am not aware of doing anything in Illinois with respect to Saskin's alleged expenditure of NHLPA funds.

### h.     Election of Interim Officers

33.     Plaintiffs next make various allegations concerning the election of "interim officers" by the NHLPA in July 2006. (Cplt., ¶ 48.)

34.     I understand the election took place during the 2006 annual Players' meeting, which was held in Whistler, British Columbia, Canada, not in Illinois. I was not present in Whistler for the election and did not participate by phone. At that time, I was no longer a member of the NHLPA, was no longer on the Executive Committee, and did not vote.

### i.     Protests and Objections

35.     Plaintiffs make various allegations about protests and objections they allegedly have lodged with the NHLPA. (Cplt., ¶ 50.)

36.     I have talked with plaintiffs about some of their protests and objections. I never did do so from Illinois. To the best of my recollection, plaintiffs never indicated they were speaking from Illinois.

### j.     Final Note on Illinois

37.     I never did anything as a member of the NHLPA Executive Committee that I thought would have any different impact in Illinois or on a player in Illinois than it would have elsewhere.

### k.     Miscellaneous

38.     During the lockout, nearly all of our Executive Committee meetings took place in Toronto (or in New York during collective bargaining sessions) or by conference call from Toronto or New York.  Plaintiff Klatt attended at least most (and maybe all) of the Toronto and New York meetings that I attended.

39.     I attended two Executive Committee meetings at O'Hare (one on November 18, 2004 and the other on January 31, 2005).  So did Trent Klatt.  Plaintiffs do not mention either meeting in their complaint.  (The meetings took place well before July 2005, which is the beginning of the period that plaintiffs complain about, and did not concern the events alleged in the complaint.)

40.     Except for changing planes at O'Hare, from July 2005 through October 2, 2006, I was in Illinois only twice -- both times when my team (the Avalanche) played the Blackhawks at the United Center.

I declare under penalty of perjury under the laws of the Unites States of America that the foregoing is true and correct.

EXECUTED on this 25TH day of November, 2006 at Tecumseh, Ontario, Canada.

_____
Bob Boughner

WINDSOR, ONTARIO

CANADA

# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION

| | |
|---|---|
| CHRIS CHELIOS, DUANE ROLOSON, AND TRENT KLATT, <br><br> Plaintiffs, <br><br> v. <br><br> NATIONAL HOCKEY LEAGUE PLAYERS ASSOCIATION, TED SASKIN, TREVOR LINDEN, VINCENT DAMPHOUSSE, BOB BOUGHNER, and BILL GUERIN, <br><br> Defendants. | ) ) ) ) Case No. 06C 5333 ) Judge Conlon ) ) Magistrate Judge Nolan ) ) ) ) ) ) ) |

## DECLARATION OF VINCENT DAMPHOUSSE

I, Vincent Damphousse, declare as follows:

1.     This declaration is based on my personal knowledge and I am otherwise competent to testify regarding these matters.

### Personal Information

2.     I am a Canadian citizen. I reside in Baie d'Urfe, Quebec, Canada. I have lived there since April 2006. From 1999 - April 2006, I resided in Mt-Tremblant, Quebec. From 1999-2004, I also had a home in San Jose, CA where I played for the San Jose Sharks.

3.     I have never resided in Illinois.

4.     I have never owned real estate in Illinois and have never had a bank account in Illinois.

5.     I have never worked for an employer based in Illinois.

6.      I have never owned a business located in Illinois, owned a business with any employees based in Illinois, or owned a business that made sales in Illinois.

7.      I am currently employed by the NHLPA as Director of Business Relations. I maintain an office in Toronto. I spend approximately two days per week in my office in Toronto and the rest of the week in my home office in Montreal or on the road.

8.      I played in the NHL from the 1986-1987 season through the 2003-04 season. The 2004-05 season was wiped out by the NHL lockout. I retired from the NHL prior to the 2005-06 season.

9.      I was a member of the NHLPA's Executive Committee from June 2002 through my retirement from the NHL prior to the 2005-06 season. I was first elected to the Executive Committee at the 2002 NHLPA annual Players' meeting in Mt-Tremblant, Quebec, Canada.

10.     The NHL lockout began on September 15, 2004. Plaintiff Trent Klatt was a member of the Executive Committee during the lockout.

## Plaintiffs' Factual Allegations

11.     I read plaintiffs' complaint ("Cplt."), and focused on the factual allegations made in Cplt. ¶¶ 29-50, 53, 58-62. TO the best of my knowledge, none of the events alleged in the complaint took place in Illinois.

### a.    CBA Negotiations

12.     Plaintiffs make allegations about collective bargaining negotiations between the NHLPA and the NHL during July 2005 and about the NHLPA's agreement to a CBA with a salary cap, which allegedly occurred in July 2005. (Cplt., ¶¶ 29-30, 53.)

13.    All of the collective bargaining negotiations between the NHLPA and the NHL that occurred in June and July 2005 took place in Toronto and New York. None of those negotiations took place in Illinois.

14.    The NHL and the NHLPA did agree on a CBA with a salary cap. The NHL and NHLPA did not come to that agreement in Illinois.

15.    As a member of the Executive Committee, I participated in many days of collective bargaining meetings between the NHLPA and the NHL. Virtually all of those meetings took place in Toronto or in New York. Plaintiff Klatt attended almost all of the meetings I attended in Toronto and New York. The only collective bargaining meeting with the NHL that I attended in Illinois occurred at O'Hare on May 25-26, 2005, which was before the period that plaintiffs complain about.

b.    **CBA Ratification**

16.    Plaintiffs make various allegations about the players' CBA ratification meeting. (Cplt. ¶¶ 31-33)

17.    The players' CBA ratification meeting was held in Toronto on July 20-21, 2005. I attended the meeting, along with a few hundred other players. Plaintiff Klatt attended.

18.    As part of the overall players' ratification meeting, we held meetings for each team. Each team meeting included players who were present in Toronto and other players on the team who participated by conference call.

19.    The ratification vote was conducted electronically on July 21. The votes were compiled and the result was announced in Toronto the same day.

20.    We had two other "all-player" meetings during the lockout. Both were held in Toronto (on November 1-2, 2004 and on February 28-March 1, 2005). I attended both of them.

-3-

### c. Removal and Buy-Out of Goodenow

21.    Plaintiffs make various allegations about actions taken "prior to July 28, 2005," regarding the "removal and buyout" of Bob Goodenow as Executive Director of the NHLPA. (Cplt., ¶¶ 34-35, 53.)

22.    On July 21, 2005, I participated in an Executive Committee meeting on this topic in Toronto. So did plaintiff Klatt. The meeting did not occur in Illinois.

23.    I later discussed this topic on conference calls with members of the Executive Board. I never participated in those calls from Illinois.

### d. Appointment of Saskin

24.    Plaintiffs make various allegations concerning the appointment of Ted Saskin as Executive Director of the NHLPA "on or about July 28, 2005." On July 21, 2005, I participated in an Executive Committee meeting on this topic in Toronto. So did plaintiff Klatt. The meeting did not occur in Illinois.

25.    On July 28, 2005, I participated in an Executive Board conference call on the topic. I did so from Mt-Tremblant, not from Illinois.

26.    Plaintiffs make various allegations about a "secret ballot election" with "a mail-in ballot." (Cplt., ¶¶ 37-39.) The decision to hold a secret ballot election was made in September 2005 during a conference call with the Executive Board. I participated in that call from Mt-Tremblant, not from Illinois.

27.    I participated in other conference calls with the Executive Board regarding Saskin's retention as Executive Director and his employment contract. I was not in Illinois for any of those calls.

e.     **Saskin's E-mail to Linden**

28.     Plaintiffs make various allegations about an e-mail that Saskin sent to NHLPA President Trevor Linden "on or about August 17, 2005." (Cplt., ¶¶ 40-43.)

29.     I saw that e-mail at some point after August 17. I was in Mt-Tremblant at the time. I was not in Illinois.

f.     **Approval of Saskin's Terms of Employment**

30.     Plaintiffs make various allegations about an Executive Board conference call held "on or about August 30, 2005" regarding Saskin's appointment and contract.

31.     I participated in an Executive Board conference call on that topic "on or about August 30, 2005." I was in Mt-Tremblant at the time. I was not in Illinois.

g.     **Use of NHLPA Funds**

32.     Plaintiffs make various allegations that Saskin used NHLPA funds to "campaign" for the post of Executive Director and for "excessive compensation." (Cplt., ¶¶ 46-47.)

33.     I do not know what plaintiffs are talking about here but I am not aware of doing anything in Illinois with respect to Saskin's alleged expenditure of NHLPA funds.

h.     **Election of Interim Officers**

34.     Plaintiffs next make various allegations concerning the election of "interim officers" by the NHLPA in July 2006. (Cplt., ¶ 48.)

35.     The election took place during the 2006 annual Players' meeting, which was held in Whistler, British Columbia, Canada, not in Illinois. I was present in Whistler for the election. At that time, I was no longer a member of the NHLPA, was no longer on the Executive Committee, and did not vote.

### i.     **Final Note on Illinois**

36.     I never did anything as a member of the NHLPA Executive Committee that I thought would have any different impact in Illinois or on a player in Illinois than it would have elsewhere.

### j.     **Miscellaneous**

37.     During the lockout, nearly all of our Executive Committee meetings took place in Toronto (or in New York during collective bargaining sessions) or by conference call from Toronto or New York. Plaintiff Klatt attended most, if not all, of the Toronto and New York meetings that I attended.

38.     We had two Executive Committee meetings at O'Hare (one on November 18, 2004 and the other on January 31, 2005). I attended and so did Trent Klatt. Plaintiffs do not mention either meeting in their complaint. (The meetings took place well before July 2005, which is the beginning of the period that plaintiffs complain about, and did not concern the events alleged in the complaint.)

39.     I attended an NHLPA agents meeting at O'Hare in December 2005. Except for changing planes at O'Hare, that is the only time I was in Illinois from July 1, 2005 through October 2, 2006, the date plaintiffs filed their complaint.

40.     If this action is dismissed and plaintiffs file a similar suit in Ontario, I will consent to jurisdiction there.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

EXECUTED on this 25 day of November, 2006 at BAIE D URFE, QEBEC, CANADA

Vincent Damphousse

# EXHIBIT 4

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION

| | |
|---|---|
| CHRIS CHELIOS, DUANE ROLOSON, AND TRENT KLATT, | ) ) ) |
| Plaintiffs, | ) Case No. 06C 5333 ) Judge Conlon |
| v. | ) ) Magistrate Judge Nolan |
| NATIONAL HOCKEY LEAGUE PLAYERS ASSOCIATION, TED SASKIN, TREVOR LINDEN, VINCENT DAMPHOUSSE, BOB BOUGHNER, and BILL GUERIN, | ) ) ) ) ) |
| Defendants. | ) |

## DECLARATION OF BILL GUERIN

I, Bill Guerin, declare as follows:

1. This declaration is based on my personal knowledge and I am otherwise competent to testify regarding these matters.

### Personal Information

2. I am a U.S. citizen. I reside in Frontenac, Missouri. I have lived there since August, 2006. I previously resided in Dallas, Texas (from August 2002 to August 2006).

3. I have never resided in Illinois.

4. I have never owned real estate in Illinois and have never had a bank account in Illinois.

5. I have never worked for an employer based in Illinois.

6.    I have never owned a business located in Illinois, owned a business with any employees based in Illinois, or owned a business that made sales in Illinois.

7.    I currently play for the St. Louis Blues. I have played in the NHL from the 1991-92 season through the 2003-04 season and in both the 2005-06 and 2006-07 seasons. The 2004-05 season was wiped out by the NHL lockout.

8.    I was a member of the NHLPA's Executive Committee from June 2000 through July, 2006. I was first elected to the Executive Committee at the 2000 NHLPA annual Players' meeting in Whistler, British Columbia, Canada.

9.    On September 15, 2004, the NHL began the lockout. Plaintiff Trent Klatt was a member of the Executive Committee during the lockout.

### Plaintiffs' Factual Allegations

10.    I read plaintiffs' complaint ("Cplt."), and focused on the factual allegations made in Cplt. ¶¶ 29-50, 53, 58-62. To the best of my knowledge, none of the events alleged in the complaint occurred in Illinois.

#### a.    CBA Negotiations

11.    Plaintiffs make allegations about collective bargaining negotiations between the NHLPA and the NHL during July 2005 and about the NHLPA's agreement to a CBA with a salary cap, which allegedly occurred in July 2005. (Cplt., ¶¶ 29-30, 53.)

12.    To the best of my knowledge, all of the collective bargaining negotiations between the NHLPA and the NHL that occurred during June and July 2005 took place in Toronto and New York. None of those negotiations took place in Illinois.

13.    The NHL and the NHLPA did agree on a CBA with a salary cap. The NHL and NHLPA did not reach that agreement in Illinois.

14. All of the collective bargaining meetings between the NHLPA and the NHL that I participated in during my entire time on the Executive Committee took place in Toronto or in New York. I did not participate in any collective bargaining meetings with the NHL in Illinois. Plaintiff Klatt was at most, if not all, of the meetings I attended.

### b. CBA Ratification

15. Plaintiffs make various allegations about the players' CBA ratification meeting. (Cplt. ¶¶ 31-33)

16. The players' CBA ratification meeting was held in Toronto on July 20-21, 2005. I attended the meeting, along with a few hundred other players. So did plaintiff Klatt.

17. As part of the overall players' ratification meeting, we held meetings for each team. Each team meeting included players who were present in Toronto and other players on the team who participated by conference call.

18. The ratification vote was conducted electronically on July 21, 2005. The votes were compiled and the result was announced in Toronto the same day, with 86% of the players voting in favor of ratification.

19. Although not mentioned by plaintiffs in their complaint, we had two other "all-player" meetings. Both were in Toronto (November 1-2, 2004 and February 28-March 1, 2005). I attended both of them. No all-player meetings were held in Illinois.

### c. Removal and Buy-Out of Goodenow

20. Plaintiffs make various allegations about actions taken "prior to July 28, 2005," regarding the "removal and buyout" of Bob Goodenow as Executive Director of the NHLPA. (Cplt., ¶¶ 34-35, 53.)

-3-

21.    On July 21, 2005, I participated in an Executive Committee meeting on this topic in Toronto. So did plaintiff Trent Klatt. Late that night, Trevor Linden and I met on this topic with Bob Goodenow in Toronto. Neither meeting occurred in Illinois.

22.    I later discussed this topic on conference calls with members of the Executive Board. I never participated in those calls from Illinois.

### d.    Appointment of Saskin

23.    Plaintiffs make various allegations concerning the appointment of Ted Saskin as Executive Director of the NHLPA "on or about July 28, 2005." On July 21, 2005, I participated in an Executive Committee meeting on this topic in Toronto. So did plaintiff Trent Klatt. The meeting did not occur in Illinois.

24.    On July 28, 2005, Bob Goodenow and Ted Saskin appeared at an NHLPA press conference in Toronto announcing Bob's resignation as Executive Director and Ted's appointment to succeed him. After the press conference, I participated in an Executive Board conference call on the topic. I did so from Dallas, not from Illinois.

25.    Plaintiffs make various allegations about a "secret ballot election" with "a mail-in ballot." (Cplt., ¶¶ 37-39.) The decision to hold a secret ballot election was made in September 2005 during a conference call with the Executive Board. I participated in that call from Dallas, not from Illinois.

26.    I participated in other conference calls with the Executive Board regarding Saskin's retention as Executive Director and his employment contract. To the best of my knowledge, I was not in Illinois for any of those calls.

### e.    Saskin's E-mail to Linden

27.    Plaintiffs make various allegations about an e-mail that Saskin sent to NHLPA President Trevor Linden "on or about August 17, 2005." (Cplt., ¶¶ 40-43.)

28.     I saw that e-mail at some point after August 17, 2005. I was in Dallas at the time. I was not in Illinois.

### f.     Approval of Saskin's Terms of Employment

29.     Plaintiffs make various allegations about an Executive Board conference call held "on or about August 30, 2005" regarding Saskin's appointment and contract. (Cplt., ¶¶ 44-45.)

30.     I participated in an Executive Board conference call on that topic "on or about August 30, 2005." I was in Dallas at the time. I was not in Illinois.

### g.     Use of NHLPA Funds

31.     Plaintiffs make various allegations that Saskin used NHLPA funds to "campaign" for the post of Executive Director and for "excessive compensation." (Cplt., ¶¶ 46-47.)

32.     I do not know what plaintiffs are talking about here but I am not aware of doing anything in Illinois with respect to Saskin's alleged expenditure of NHLPA funds.

### h.     Election of Interim Officers

33.     Plaintiffs next make various allegations concerning the election of "interim officers" by the NHLPA in July 2006. (Cplt., ¶ 48.)

34.     I understand the election took place during the 2006 annual Players' meeting, which was held in Whistler, British Columbia, Canada, not in Illinois. I was not present in Whistler for the election. I participated by phone from New Jersey. That was my last day as a member of the Executive Committee.

### i.     Protests and Objections

35.     Plaintiffs make various allegations about protests and objections they allegedly have lodged with the NHLPA. (Cplt., ¶ 50.)

36.    I have talked with plaintiffs about some of their protests and objections. I never did do so from Illinois. To the best of my recollection, plaintiffs did not indicate that they were in Illinois.

### j.    Final Note on Illinois

37.    I never did anything as a member of the NHLPA Executive Committee that I thought would have any different impact in Illinois or on a player in Illinois than I thought it would have elsewhere.

### k.    Miscellaneous

38.    During the lockout, nearly all of our Executive Committee meetings took place in Toronto (or in New York during collective bargaining sessions) or by conference call from Toronto or New York. Plaintiff Klatt attended most, if not all, of the meetings in Toronto and New York that I attended.

39.    We had two Executive Committee meetings at O'Hare (one on November 18, 2004 and the other on January 31, 2005). I attended and so did plaintiff Klatt. Plaintiffs do not mention either meeting in their complaint. (The meetings took place well before July 2005, which is the beginning of the period that plaintiffs complain about, and did not concern the events alleged in the complaint.)

40.    From July 1, 2005, through October 2, 2006, except for changing planes at O'Hare, I was in Illinois only twice -- both times to play for my team (Dallas Stars) against the Blackhawks at the United Center.

41.    If plaintiffs' action here is dismissed and they file a similar suit in Ontario, I will consent to jurisdiction there.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

-6-

**EXECUTED** on this _25_th_ day of November, 2006 at _Frontenac, MO_

_____
Bill Guerin

-7-

# EXHIBIT 5

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS,**
**EASTERN DIVISION**

| | |
|---|---|
| CHRIS CHELIOS, DUANE ROLOSON, AND TRENT KLATT, | ) )  ) |
| Plaintiffs, | ) Case No. 06C 5333 ) Judge Conlon |
| v. | ) ) Magistrate Judge Nolan |
| NATIONAL HOCKEY LEAGUE PLAYERS ASSOCIATION, TED SASKIN, TREVOR LINDEN, VINCENT DAMPHOUSSE, BOB BOUGHNER, and BILL GUERIN, | ) ) ) ) ) |
| Defendants. | ) |

## DECLARATION OF TREVOR LINDEN

I, Trevor Linden, declare as follows:

1.    This declaration is based on my personal knowledge and I am otherwise competent to testify regarding these matters.

### Personal Information

2.    I am a Canadian citizen. I reside in Vancouver, British Columbia, Canada. I have lived there since 1988. During the seasons of 1998-99 through 2000-01, I also lived in the New York, Montreal and Washington metro areas.

3.    I have never resided in Illinois.

4.    I have never owned real estate in Illinois and have never had a bank account in Illinois.

5.    I have never worked for an employer based in Illinois.

6.     I have never owned a business located in Illinois, owned a business with any employees based in Illinois, or owned a business that made sales in Illinois.

7.     I have played in the NHL from the 1988-89 season through the 2003-04 season and in both the 2005-06 and 2006-07 seasons. The 2004-05 season was wiped out by the NHL lockout.

8.     I was the President of the NHLPA and a member of its Executive Committee from June 1998 until July 2006. I was first elected President and to the Executive Committee at the 1998 NHLPA annual Players' meeting in Braselton, Georgia.

9.     On September 15, 2004, the NHL began the lockout. Plaintiff Trent Klatt was a member of the Executive Committee during the lockout. So were Daniel Alfredsson and Arturs Irbe, who are not parties to this action. The Executive Committee had the responsibility and authority for collective bargaining with the NHL.

### Plaintiffs' Factual Allegations

10.     I read plaintiffs' complaint ("Cplt."), and focused on the factual allegations made in Cplt. ¶¶ 29-50, 53, 58-62. To the best of my knowledge, none of the events alleged in the complaint took place in Illinois.

#### a.     CBA Negotiations

11.     Plaintiffs make allegations about collective bargaining negotiations between the NHLPA and the NHL during July 2005 and about the NHLPA's agreement to a CBA with a salary cap, which allegedly occurred in July 2005. (Cplt., ¶¶ 29-30, 53.)

12.     All of the collective bargaining negotiations that took place between the NHLPA and the NHL during June and July 2005 occurred in Toronto and New York. None of those negotiations took place in Illinois.

-2-

13.     The NHL and the NHLPA did agree on a CBA with a salary cap. The NHL and NHLPA did not come to that agreement in Illinois.

14.     As President of the NHLPA, I participated in approximately 30 days of collective bargaining meetings between the NHLPA and the NHL. Virtually all of those meetings took place in Toronto or in New York. Plaintiff Klatt was at most of the meetings I attended in Toronto and New York. The only collective bargaining meetings with the NHL that I attended in Illinois occurred at O'Hare on January 18, 2005 and May 25-26, 2005. Both meetings were before the period that plaintiffs complain about. Both were held at O'Hare simply to accommodate the schedules of certain participants. Plaintiff Klatt did not attend either of them.

### b.     CBA Ratification

15.     Plaintiffs make various allegations about the players' CBA ratification meeting. (Cplt. ¶¶ 31-33)

16.     The players' CBA ratification meeting was held in Toronto on July 20-21, 2005. I attended the meeting, along with a few hundred other players. Plaintiff Klatt attended too.

17.     As part of the overall players' ratification meeting, we held meetings for each team. Each team meeting included players who were present in Toronto and other players on the team who participated by conference call.

18.     The ratification vote was conducted electronically on July 21, 2005. The votes were compiled and the result was announced in Toronto the same day, with 86% of the players voting in favor of ratification.

19.     We had two other "all-player" meetings during the lockout. Both were held in Toronto (on November 1-2, 2004 and on February 28-March 1, 2005). I attended both of them.

### c.     Removal and Buy-Out of Bob Goodenow

20.     Plaintiffs make various allegations about actions taken "prior to July 28, 2005," regarding the "removal and buyout" of Bob Goodenow as Executive Director of the NHLPA. (Cplt., ¶¶ 34-35, 53.)

21.     On July 21, 2005, I participated in an Executive Committee meeting on this topic in Toronto. So did plaintiff Trent Klatt. Late that night, Bill Guerin and I met in Toronto with Bob Goodenow on this topic. Neither meeting occurred in Illinois.

22.     I later discussed this topic on conference calls with members of the Executive Board and with Ted Saskin. I never participated in those calls from Illinois.

### d.     Appointment of Saskin

23.     Plaintiffs make various allegations concerning the appointment of Ted Saskin as Executive Director of the NHLPA "on or about July 28, 2005." On July 21, 2005, I participated in an Executive Committee meeting on this topic in Toronto. So did plaintiff Trent Klatt. I later met with Saskin on this topic, also in Toronto. Neither meeting took place in Illinois. I also spoke from Vancouver by phone with Saskin between July 21 and 28, 2005.

24.     On July 28, 2005, Bob Goodenow and Ted Saskin appeared at an NHLPA press conference in Toronto announcing Goodenow's resignation as Executive Director and Saskin's appointment to succeed him. After the press conference, I participated in an Executive Board conference call on the topic. I did so from Vancouver, not from Illinois.

25.     Plaintiffs make various allegations about a "secret ballot election" with "a mail-in ballot." (Cplt., ¶¶ 37-39.) The decision to hold a secret ballot election was made in

-4-

September 2005 during a conference call with the Executive Board. I participated in that call from Vancouver, not from Illinois.

26.     I participated in other conference calls with the Executive Board regarding Saskin's retention as Executive Director and his employment contract. To the best of my recollection, I was not in Illinois for any of those calls.

### e.     Saskin's E-mail to Linden

27.     Plaintiffs make various allegations about an e-mail that Saskin sent to me "on or about August 17, 2005." (Cplt., ¶¶ 40-43.)

28.     I received that e-mail in Vancouver, not in Illinois.

### f.     Approval of Saskin's Terms of Employment

29.     Plaintiffs make various allegations about an Executive Board conference call held "on or about August 30, 2005" regarding Saskin's appointment and contract.

30.     I participated in an Executive Board conference call on that topic "on or about August 30, 2005." I was in Vancouver at the time. I was not in Illinois.

### g.     Use of NHLPA Funds

31.     Plaintiffs make various allegations that Saskin used NHLPA funds to "campaign" for the post of Executive Director and for "excessive compensation." (Cplt., ¶¶ 46-47.)

32.     I do not know what plaintiffs are talking about here but I am not aware of doing anything in Illinois with respect to Saskin's alleged expenditure of NHLPA funds.

### h.     Election of Interim Officers

33.     Plaintiffs next make various allegations concerning the election of "interim officers" by the NHLPA in July 2006. (Cplt., ¶ 48.)

34. The election took place during the 2006 annual Players' meeting, which was held in Whistler, British Columbia, Canada, not in Illinois. I was present in Whistler for the election. I concluded my service as NHLPA President at this meeting.

### i. Protests and Objections

35. Plaintiffs make various allegations about protests and objections they allegedly have lodged with the NHLPA. (Cplt., ¶ 50.)

36. I have talked with plaintiffs about some of their protests and objections. To the best of my recollection, I never did do so from Illinois. Nor did plaintiffs indicate they were in Illinois.

### j. Final Note on Illinois

37. I never did anything as a member of the NHLPA Executive Committee that I thought would have any different impact in Illinois or on a player in Illinois than it would have elsewhere.

### k. Miscellaneous

38. During the lockout, nearly all of our Executive Committee meetings took place in Toronto (or in New York during collective bargaining sessions) or by conference call from Toronto or New York. Plaintiff Klatt attended most, if not all, of the Toronto and New York meetings that I attended.

39. I attended two Executive Committee meetings at O'Hare (one on November 18, 2004 and the other on January 31, 2005). So did plaintiff Klatt. Plaintiffs do not mention either meeting in their complaint. (The meetings took place well before July 2005, which is the beginning of the period that plaintiffs complain about, and did not concern the events alleged in the Complaint.)

-6-

40.     From July 1, 2005, through October 2, 2006, except for changing planes at O'Hare, I was in Illinois only ~~once~~ TWICE -- when my team (the Vancouver Canucks) played the Blackhawks at the United Center.

41.     If this action is dismissed and plaintiffs file a similar suit in Ontario, I will consent to jurisdiction there.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

EXECUTED on this _25_ day of November, 2006 at _DENVER_ .


Trevor Linden